# CHARLESTON.

GIEBELL v. THE COLLINS COMPANY.

Submitted January 15, 1904—Decided February 2, 1904.

1. REASONABLE CARE—*Employer.*

It is the duty of the master to provide a suitable place in which, and suitable appliances with which, the employee, being himself in the exercise of due care, can perform his duty without being exposed to unnecessary dangers; that is, to dangers which do not of necessity attend the exercise of the employment; but the master is not bound to furnish for his workmen the safest and best machinery, nor to provide the best methods for the work in which he is engaged, in order to save himself from responsibility for injuries to his employee. If the machinery and appliances, which he has, be in common use, and are such as can, with reasonable care, be used without danger to the employee, it is all that can be required of the employer. (p. 520).

2. MASTER AND SERVANT.

It is the duty of a master who sets a servant to work in a place of danger to give him such notice and instruction as is reasonably required by the youth, inexperience, or want of capacity of the servant, and failing to do so, he is liable for the damage suffered through such neglect. (p. 521).

3. MASTER AND SERVANT.

Where the servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon him-

self, if he goes on with it; but this only applies where the servant is of sufficient discretion to appreciate the dangers incident to the work. Where there are latent defects, or hazards, incident to an occupation, of which the master knows, or ought to know, it is his duty to warn the servant of them fully, and failing to do so, he is liable to him for any injury he may sustain in consequence of such neglect; and this rule applies even where the danger of hazard is patent, if through youth, inexperience, or other cause, the servant is incompetent to fully understand and appreciate the nature and extent of the hazard. It is the master's duty to warn him of any danger incident to the business; and if, with such knowledge, he chooses to assume the risk, and is capable of appreciating the hazard, and of choosing and contracting for himself, the master is then absolved from liability for injuries from the ordinary hazards. (p. 523).

Error to Circuit Court, Ritchie County.

Action by Charles L. Giebell, a minor, by Florence Giebell, his next friend, against Creed Collins and C. W. Sprinkle, partners under the firm name of the Collins Company. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

SHERMAN ROBINSON and J. NEWMAN, for plaintiffs in error.

J. W. FIDLER and HOMER ADAMS, for defendant in error.

MILLER, JUDGE:

Charles L. Giebell, a minor, by Florence Giebell, as his next friend, sued Creed Collins and C. W. Sprinkle, partners in business under the firm name of The Collins Company, in an action of trespass on the case, in the circuit court of Ritchie county, and recovered a judgment against them as such company for five hundred dollars, with interest thereon from the 3rd day of March, 1903, the date of the judgment, until paid, and his costs by him in the action expended.

To this judgment, a writ of error and *supersedeas* was granted to the defendants by this Court.

The declaration contains two counts, each of which alleges that the said defendants were lawfully possessed of a certain large planing mill, or lumber manufacturing plant, situate in said county, and being so possessed thereof as aforesaid, they

were engaged in dressing, finishing and manufacturing lumber, and the said defendants being so engaged as aforesaid, they employed. plaintiff to engage in said work of dressing, finishing and manufacturing lumber as aforesaid, and it then and there became and was the duty of said defendants to use due and proper care and caution that the plaintiff should be provided with good, proper, safe and suitable machinery and appliances to be used by him in said employment as aforesaid, and that said plaintiff should be secure and safe in all respects in his employment from any injury incident thereto, against which ordinary care could avail, was so engaged for said defendants in said work. The breaches of duty on the part of defendants, the injury to plaintiff, and the damages claimed by him are then averred. To the declaration and each count thereof defendants interposed a demurrer, which was overruled by the court. Plaintiffs in error say that the demurrer was and is well taken and should have been sustained, because the declaration would compel defendant company to provide for plaintiff a kind and character of material, machinery, appliances, and a place in which to labor, not required by law.

Buswell on Pers. Inj. section 192, says: "The authorities are agreed that it is the duty of the master to provide a suitable place in which, and suitable appliances with which, the employee, being himself in the exercise of due care, can perform his duty without being exposed to unnecessary dangers; that is, to dangers which do not of necessity attend the exercise of the employment." 14 Am. & Eng. Enc. Law, 877. In *Berns* v. *Coal Co*, 27 W. Va. 286, it is held that "The master is not bound to furnish for his workmen the safest and best machinery nor to provide the best methods for the work in which he is engaged, in order to save himself from responsibility for injuries to his servant. If the machinery and appliances, which he has, be in common use, and are such as can with reasonable care be used without danger to the employee, it is all that can be required of the employer." The averments of the declaration are not insufficient; and, if redundant, they do not, for that reason, vitiate the pleading. The demurrer was properly overruled.

On the 18th day of July, 1900, the plaintiff, while in the employ of the defendants in their said planing mill, had all of

his fiingers cut from his left hand, by an edger or jointing machine, a part of the machinery of said planing mill and operated therewith, at which he was, at the time, working. Plaintiff, at the time of the accident, was only sixteen years old. Before he was put into the machinery room, where he was hurt, he had been working for the company in its lumber yards, carrying lumber and off bearing. It is stated in the evidence that he had worked for the company in its yards at different times from 1897, until about six weeks before he was injured as aforesaid.

The plaintiff testified that, at the time he was hurt, he was working under the direction of said C. W. Sprinkle, a member of the firm, and one of the defendants, who set him to work on the jointer; that he had been working in the machinery room a month or six weeks; that, during that time, he did not work the whole time on any particular machine; that he worked on the jointer, rip saw and cut off saw; that prior to going to work for the Collins Company in that room, he had not had any experience whatever with machinery; that this was the first machinery he had ever worked with; that the company did not, nor did any person for it, in any way, explain to him the nature or workings of the machines or either of them; that the company just put him up there to work upon them; and that no person ever explained to him how the machines should be worked. The knives or the bits on the cylinder of the said jointer were about twelve inches in length, and about eight or ten inches of them were exposed. At the time of the accident, the guard was not properly adjusted thereon as he afterwards learned, and the machine had no fender upon it, although a fender which belonged to it, was in the room, and was put on the jointer some time after the accident occurred. The said cylinder made about forty-seven hundred revolutions per minute. A machine called a moulder, in operation at the time, stood near the jointer. A piece of coffee sack about two feet square hung between the jointer and moulder. The shavings from the moulder would fly all over the jointer, the coffee sack not being sufficient to prevent them from so doing. At the time of the accident, plaintiff was at the jointer dressing or jointing a piece of oak timber about two feet and nine inches long, four inches wide, and one and three-quarters of an inch

thick, for a transom bar. Both of his hands were on the stick. His left hand was in front. A shaving from the moulder struck him in the eye. Plaintiff quickly took his right hand from the stick to remove the shaving from his eye, that hand being on the back end of the transom bar, when his left hand slipped from the bar and went into the bits, which cut off all of the fingers of that hand. It also appears from the evidence that the jointer was and is the most dangerous of the machinery mentioned. The plaintiff further testifies that he doesn't think the accident would have occurred, if the shaving had not struck him; and that, if the machine had been in proper condition, and something on it to protect his hands from the bits, he would not have been hurt; that there was nothing on the machine to protect him from getting hurt, while he was running it; that he knew nothing about adjusting the guard, and had been told nothing about it by any one, and knew nothing about a fender, or the use of it, until some time after he was hurt; that on a visit to the mill after the accident he saw that a fender had been put on the jointer. It is also shown that plaintiff's brother, at the time of the accident, was operating the moulder, and that when running, the moulder would throw shavings all over the jointer.

A number of witnesses were examined on behalf of the plaintiff, who proved, in substance, that the operation of the jointer was dangerous without a fender, and still more dangerous with the guard unadjusted in the absence of the fender, as it was shown to be; while, perhaps, as many witnesses for the defendants testified that, with the guard properly arranged without the fender, the machine would be more convenient for its purposes, and not more dangerous to them; but they were workmen of experience in that kind of labor.

Defendant Sprinkle testified that plaintiff had worked at times for the company at odd jobs around the lumber yard and mill, from September, 1897, until he was put in the machine room. He further stated: "We put him up stairs in the machine room to help his brother. I had general charge of the work of the business." Witness also testified that he did not direct plaintiff to work on the jointer; that he sent him to help his brother, and that there were in that room, a shaver, rip saw, a

cut off saw, a moulder, a buzz saw, planer, and jointer; and that two men generally worked in the room.

All the evidence with the instructions hereinafter referred to was submitted to the jury, empaneled in the case; and a verdict found for the plaintiff upon which the judgment aforesaid is predicated. The defendants moved the court to set aside the verdict and grant to them a new trial, upon the ground that said verdict was and is contrary to the law and evidence, but the motion was overruled, to which action of the court they excepted. All of the evidence heard by the jury and the several instructions given, as well as those refused, are made parts of the record by bills of exception.

The evidence establishes, at the least, that plaintiff was a boy only sixteen years of age; that, previous to his employment in said room, he had had no experience in operating machinery; that he was sent to the machinery room by C. W. Sprinkle, a member of the defendant company, who had charge of the business, to labor, without any instructions from the company or any other person, as to the nature or manner of operating the machinery or the dangers thereof; that there were in the machinery room the said jointer, and the other machines above mentioned; that the jointer had upon it a guard, not properly adjusted, but no fender; and that plaintiff, as he testifies, knew nothing about the guard or fender or the use of them until after he was hurt.

Buswell, *supra,* section 202, says: "Since it is the duty of the master to use due diligence to see that the servant is not exposed to unnecessary risks in the course of his employment, he is bound, before an employee is put in charge of dangerous machinery with which he is not acquainted, to instruct and qualify him for his duty." 14 Am. & Eng. Enc. Law, 897, thus states the rule; "It is the duty of a master who sets a servant to work in a place of danger to give him such notice and instruction as is reasonably required by the youth, inexperience, or want of capacity of the servant, and failing to do so, is liable for the damages suffered through such neglect." These authorities are supported by numerous decisions of the highest courts of the different states of the Union, and correctly state the law.

The defendants contend that plaintiff accepted the risk inci-

dent to his employment, and cite *Berns* v. *Coal Co., supra*: "When a servant enters into the employment of a master he assumes all the ordinary risks incident to the employment, whether the employment is dangerous or otherwise. If a servant wilfully encounters dangers which *are known to him* or are notorious, the master is not responsible for the injury occasioned thereby." A recurrence to the evidence is a sufficient answer to this proposition. No such case as the one cited is here presented. In Wood on Master and Servant, section 349, it is said: 'Where the servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon himself, if he goes on with it; but this only applies where the servant is of sufficient discretion to appreciate the dangers incident to the work. Where there are latent defects, or hazards, incident to an occupation, of which the master knows, or *ought to know,* it is his duty to warn the servant of them fully, and, failing to do so, he is liable to him for any injury he may sustain in consequence of such neglect; and this rule applies even where the danger or hazard is patent, if through youth, inexperience, or other cause, the servant is incompetent to fully understand and appreciate the nature and extent of the hazard. It is the master's duty to warn him of any danger incident to the business; and if, with such knowledge, he chooses to assume the risk, and is capable of appreciating the hazard, and of choosing and contracting for himself, the master is then absolved from liability for injuries from the ordinary hazards." This rule is also sustained by many decisions of the courts of last resort and is well established law. All of these questions of fact were involved in the case; were fully and fairly submitted to the jury; and were ascertained and fixed by their verdict, against the contention of the defendants. "The jury is the sole judge of the credibility of contradicting witnesses, and of the weight to be given to their testimony. The verdict of a jury will be held sacred by this Court, unless there is a plain preponderance of credible evidence against it, evincing a miscarriage of justice from some cause, such as prejudice, bias, undue influence, misconduct, oversight or misconception of the facts or law." *Young* v. *West Virginia & R. Co.,* 44 W. Va. 218.

We cannot say that the verdict of the jury is erroneous for

any reason. The refusal of the court to set it aside was, therefore, proper, unless the instructions, or some of them, given to the jury were improper, or unless the proffered instructions rejected, or some of them, should have been given by the court.

At the instance of the plaintiff, the court gave to the jury the following instructions:

"1. The jury are instructed that it is direct, personal and absolute obligation of the master to provide reasonably safe and suitable machinery and appliances for the business. This includes the exercise of reasonable care in furnishing such appliances. The master must furnish a safe place in which his servant is to work. And the jury are further instructed that the master is liable for any injury to his servants, due to the *neglect* or failure of the master to provide such safe and suitable machinery and appliances for the business, or to exercise such reasonable care in furnishing such appliances, or to furnish his servants a safe place in which to work.

"2. The jury are further instructed that it is the duty of the master who sets a servant to work in a place of danger or with dangerous machinery or appliances, to give him such notice and instructions as is reasonably required by the youth, inexperience, or want of capacity of the servant; and failing to do so, the master is liable for the damage suffered through such failure.

"4. The jury are futher instructed that if they believe from the evidence that the plaintiff in his action is entitled to recover, he may recover the *expenses* of his cure, the value of his time lost during his cure; and a fair compensation for his *physical* and mental suffering *caused* by the injury, as well as any permanent reduction of his power to earn money.

"5. The jury are further instructed that the duties of the master to provide safe and suitable machinery and appliance for the business, and to furnish a safe place in which his servant is to work, are duties which the master can either perform personally or delegate their performance to some one else; but if both the master and the person to whom such duties are delegated fail in the performance of any of said duties, and injury results to the servant by reason of said failure, the master is liable for such injury.

"6. The jury are further instructed that the right of the

plaintiff, *Cherles* L. 'Giebell, to recover in this action, if the jury believe from the evidence he is entitled to recover, is not affected by his having contributed to the injury complained of, if the jury believe from the evidence that he did contribute to his own injury, unless he was in fault in so doing.

"7. The jury are further instructed that in determining whether the plaintiff, *Cherles* L. Giebell, a boy sixteen years of age, was guilty of contributory negligence, the jury have the right to take into consideration his age, capacity and experience, and although he may have been guilty of an act or acts which in an adult would have amounted to an assumption of the risk of injury and a waiver of the duty the master owes him, yet he cannot be held to have assumed any such risk or waived any such duty which one of his age, discretion and experience could not fully comprehend and appreciate.

"8. The jury are further instructed that, while it is a general rule that an employe accepts service subject to risks incidental to it, and when the appliances or means or methods of work are known to the *emplye* he can make no claim upon the employer to charge them, and if injury results therefrom can recover no damages; yet this does not relieve the employer from the obligation which makes it his imperative duty to warn the employe of *danger* and instruct him how to avoid the danger, even when the danger is visible and open to observation, if *toough* youth, inexperience, or lack of ability, the employe is incompetent to understand fully and appreciate the nature and extent of the danger." To the giving of all of which instructions, except instruction No. 4, the defendants objected.

The court also gave to the jury, at the instance of the defendants, the following instructions:

"1. The court instructs the jury that the defendant, The Collins Company, was not bound to furnish to the plaintiff, Charles L. Giebell, the safest and best appliances and machinery used, with which to work, but the defendant Collins Company should be acquitted of fault in this respect, if the appliances and machinery which they did furnish the plaintiff, *Cherles* L. Gicbell, was *reasonable* safe and suitable.

"2. The court instructs the jury that before the plaintiff, *Cherles* L. Gicbell, can recover from the defendant, the Collins Company, in this cause, for the loss of his hand while in

said company's employ, he, Charles L. Giebell, must overcome two presumptions;—First, the presumption that the defendants did provide safe and suitable machinery and a safe and suitable place in which to work; second, the presumption that the plaintiff assumed all the usual and ordinary hazards of the business in which he is engaged, and that unless the plaintiff does overcome the said presumptions by a preponderance of the evidence you will find for the defendant.

"5. The court instructs the jury that if they believe from the evidence in this case, that the plaintiff was guilty of contributory negligence that then he can not recover, and the jury will find for the defendant company.

"7. The court instructs the jury that if the said Charles L. Giebell knew at the time of his entry upon his duties for the Collins Company or if he *aglerwards* found out or discovered that the machinery or jointer that he was called upon to use was dangerous, and he continued his employment without objection or complaint, he has assumed the risk of the danger then known or discovered, and can not recover in this suit.

"8. The court instructs the jury that the *miner cah* not recover damages on account of the dimunition of earning power or capacity during minority unless emancipation be shown, but they may consider such diminution after he attains his majority." But the court refused to give the following insructions:

"4. The jury are instructed that if they believe from the evidence that the ground of the plaintiff's action is negligence, it rests upon the plaintiff, Charles L. Giebell, to trace the fault of the injury to the defendant, The Collins Company, and for this purpose he must show the circumstances under which the injury occurred; and if, from the circumstances, so proven by the plaintiff it appears that the fault was mutual, or, in other words that contributory negligence is fairly imputable to the plaintiff, he has by proving the circumstances, disproved his right to recover, and, on the plaintiff's evidence alone, the jury should find for the defendant.

"6. The court instructs the jury that the employe, Charles L. Giebell, accepted the service subject to the risks incidental to it, and if the appliances or methods of work were known to him, he could make no claim upon his employer, The Collins

Company, to have them changed. He accepted them as they were, and if the injury has resulted therefrom he can not recover.

"7.  The court instructs the jury that if the said Charles L. Giebell knew at the time of his entry upon his duties for the Collins Company or if he *agterwards* found out or discovered that the machinery or jointer that he was called *ot* use was dangerous, and has continued his employment without objection or complaint, he has assumed the risk of the danger then known or discovered, and can not recover in this suit.

"11.  The jury are instructed that if they believe from the evidence in this case, that the plaintiff in the case of the jointer knew of the knives and cutting edges, and that they were dangerous, then no instructions were necessary as to the dangerous character thereof, as an employe assumes all ordinary hazard of the business in which he is engaged, and if injured thereby he can not recover." To which refusal the defendants excepted.

Reading instruction No. 1 given for the plaintiff, and instructions No's 1 and 2 given for the defendants, together and as a whole, they state the law correctly.

It is urged by defendants that instruction No. 2, given for plaintiff, is erroneous, because it assumes the dangerous character of the employment, and the inexperience of plaintiff. There is no conflict in the evidence about either of these propositions. They are undisputed. The instruction was not improper upon the proof. Instructions 5, 6, 7 and 8 are not subject to the objections thereto, made by the defendants. We think said instructions were pertinent and properly given.

Defendants complain because their proffered instruction No. 4 was not given. As an abstract proposition, it is a correct principle of law, and governs in cases where the evidence of the plaintiff is demurred to by the defendant; where there is a motion to set aside the verdict of a jury in favor of a plaintiff, or may be given where there is some evidence tending to prove the facts upon which such instruction is based. There is no evidence in this case which proves, or tends to prove, that the fault which caused the accident to plaintiff was mutual or that contributory negligence is fairly imputable to him. A verdict based upon that assumption would have been erroneous.

It was not plaintiff's fault that the guard on the jointer was not properly adjusted, or that the machine had no fender upon it. Neither was it his fault that the shaving was thrown into his eye. He did at the time what almost every person would have done. Suffering from the sudden pain, he quickly disengaged his right hand, and attempted to remove the shaving from his eye. The other hand then slipped from the transom bar, and was caught by the revolving machine, unguarded by the proper fender. He attempted to protect his eye, and thereby lost his fingers. It cannot be said with any degree of reason that plaintiff, under the circumstances, was guilty of negligence. The question of contributory negligence is fully covered by other instructions in the case, if there be any such question therein. The proposed instruction No. 4 was properly refused. *State v. Staley,* 45 W. Va. 793, and cases there cited.

Rejected instructions Nos. 6, 7 and 11 were and are improper, because they omit to say to the jury that, in their consideration of the questions propounded therein, they must also consider the age, capacity, experience and discretion of the plaintiff. *Turner v. N. & W. R. R. Co.,* 40 W. Va. 676.

In that case it is held that, "in determining whether a boy sixteen years of age was guilty of contributory negligence, the jury have the right to take into consideration his age, capacity, and experience, and although he may have been guilty of an act which in an adult would have amounted to an assumption of the risk of injury, and a waiver of the duty the master owes him, yet he can not be held to have assumed any such risk or waived any such duty, which one of his age, discretion and experience could not fully comprehend and appreciate."

There is no error in the record prejudicial to the defendants. The judgment complained of must therefore be affirmed.

*Affirmed.*