# CHARLESTON

## LAVERTY *v.* HAMBRICK.

Submitted March 5, 1907.    Decided April 27, 1907.

1    MASTER AND SERVANT—*Assumption of Risk.*

A minor, as a servant or employe, assumes the risk of all dangers, incident to the work or business in which he is engaged, that are known to, and fully appreciated by, him.   (p. 688.)

2. SAME—*Safe Place to Work—Waiver.*

> By entering upon, and continuing in, service in an unsafe place, the dangers of which are known and fully appreciated by him, a servant waives the performance by the master, of the duty imposed upon him by law in respect to the safety of the place in which the service is performed. (p. 692.)

Error to Circuit Court, Cabel County.

Action by B. H. Laverty, who sues by his next friend, against J. W. Hambrick. Judgment for plaintiff. Defendant brings error.

*Reversed and Judgment for Defendant.*

BROWN, JACKSON & KNIGHT, for plaintiff in error.

POFFENBARGER, JUDGE:

For injuries to his hand, suffered while operating a small circular saw in a keg factory, B. H. Laverty obtained a judgment, in the circuit court of Cabel county, against J. W. Hambrick, for $3,000.00, to which Hambrick obtained a writ of error. It was rendered on a demurrer to the evidence, and the error assigned goes to the action of the court in overruling the demurrer and rendering judgment.

Laverty was a minor, about fourteen and a half years old, but had been working in the factory for six months or more, during half of which time he had operated the machine by which he was hurt. The only defect in the machine, of which complaint is made, if it be a defect, was the shortness of a leather strap which controlled the little carriage by which the wood, a stave eighteen or nineteen inches long, was fed to the saw, in respect to the distance to which it could be pulled back, toward the operator in advance of the saw, for the reception of a new stave, or one which had passed the saw and thus become trimmed on one side, for the like operation on the other side, after having been turned. Plaintiff claims the stave upon the carriage, when it was so pulled back, should have cleared the saw by two or three inches, but owing to the shortness of this inelastic leather strap, it could be pulled far enough to allow the stave to clear the saw by only about one-half of an inch. As the running of the machine would jar the carriage, this distance between it and the saw was so short that the jarring of the

machine would sometimes cause the saw to take hold of the
stave before the operator was ready. The carriage did not
work automatically, but had to be pushed by the operator.
After pushing the carriage through and so trimming one
side of the stave, the operator, while pulling the carriage
back with one hand, turned the stave with the other. The
testimony does not show that the shortness of the strap or
the jarring of the carriage caused the injury or in any way
contributed thereto. The plaintiff, by his own testimony,
shows that the cause of the injury was the slipping of one or
both of his feet while starting to push the carriage to the
saw after having turned the stave and replaced it on the car-
riage. The cause of his slipping, he says, was the accumu-
lation of saw dust, edgings and trash from his machine in
the place in which he stood. This accumulation was, accord-
ing to his testimony, from six inches to a foot deep, and the
practice was to clean it out at the end of the week on Satur-
day evenings. When it had been cleaned out he did not
know, but he was hurt on a certain Tuesday morning. After
having said repeatedly that this accumulation of trash "was
the biggest part" of the cause of his injury, he finally stated,
on cross-examination, that he had slipped when he got hurt,
and, then, that the stuff under his feet had been the immedi-
ate cause of his injury. The question was put to him di-
rectly in this form:

"Q. Now then, it was the stuff under your feet that is
the immediate cause of your injury?

A. Yes, sir."

Then follows this:

"Q. And it wasn't the shortness of the strap at all; it was
simply the stuff under your feet that caused your injury?

A. The strap was dangerous.

Q. I say it might have been dangerous, but, however, it
was the stuff under your feet that caused you to slip?

A. Yes, sir, that slipped me.

Q. That is what caused you to slip; that is what made you
slip?

A. Yes, sir."

The following is additional testimony to the same effect:

"Q. Now, Harrison, you say it was the stuff under your feet

that caused you to be injured, that you slipped; now what were you doing at the time you slipped?

A.　I had just whirled the stave and started to put it back in the saw.

Q.　Now, as I understand you, you say that at the time you slipped, you had turned the stave over, and put it back on the carriage, so as to edge the other side of it?

A.　I started to shove it back.

Q.　You had edged the other side of it, and you had turned it over and started to edge the other side?

A.　Yes, sir.

Q.　Or, rather, you had turned the stave over on the carriage, for the purpose of edging the other side, and started to shove the carriage against the saw, you say?

A.　Yes, sir.

Q.　Now, how did you slip?

A.　My feet slipped out from under me.

Q.　What pressure was brought on you that caused you to slip?

A.　The trash and stuff under my feet.

Q.　You say the trash was there when you went in that morning?

A.　Yes, sir.

Q.　And that your feet slipped?

A.　Yes, sir."

It also appears from the testimony of the plaintiff that he knew and appreciated the danger of his situation. His testimony on this point is as follows:

"Q.　Had that trash been there before, when you were working the saw?

A.　Yes, sir.

Q.　Had you ever slipped before?

A.　Yes, sir.

Q.　You had slipped before?

A.　Yes, sir.

Q.　Then you knew that the trash that had been allowed to accumulate under your feet, would cause you to slip?

A.　Yes, sir, I knew it would cause me to slip.

Q.　Because you had slipped before?

A.　Yes, sir.

Q.　When you were working the same saw?

A.   Yes, sir.

Q.   Under the same conditions?

A.   Yes, sir.

\*      \*      \*      \*

Q.   Did you know it was dangerous when you were standing there, so that is the reason you complained to the man, you knew it was dangerous?·

A.   Yes, sir.

Q.   You knew it was dangerous?

A.   Yes, sir.

Q.   And you fully appreciated the fact that it was dangerous, if you run that saw, with this stuff under your feet?

A.   Yes, sir.

Q.   And that is the reason you told him to move it?

A.   Yes, sir.

Q.   But you still worked on?

A.   Yes, sir, he told me I had to work or quit.

Q.   And you chose to work and take chances, rather than quit?

A.   Yes, sir."

The elaborate citation of authorities in the petition for the writ of error, relied upon as a brief for the plaintiff in error, makes it quite clear that the demurrer should have been sustained. Among others, *Williams* v. *Belmont Coal & Coke Co.*, 55 W. Va. 85, is cited, holding as follows: "A minor who enters the employ of another assumes the risk of all such apparent dangers as he is capable of comprehending and avoiding and in a suit against his employer because of his death by reason of the alleged negligence of his employer, it must be shown that his death was occasioned by negligence on the part of the employer other than such apparent danger." To the same effect are the following decisions cited: *Cudahay Packing Co.* v. *Marcan*, 106 Fed. Rep. 645, 54 L. R. A. 258; *Buckley* v. *Mnfg. Co.*, 113 N. Y. 540; *Shaw* v. *Sheldon*, 103 N. Y. 667; *Sullivan* v. *Mnfg. Co.*, 113 Mass. 396; *Rooney* v. *Sewell*, 161 Mass. 153; *Pratt* v. *Prouty*, 153 Mass. 334; *Ciriack* v. *Woolen Co.*, 146 Mass. 182; *Hickey* v. *Taff*, 105 N. Y. 26; *Bohn Mfg. Co.* v. *Erickson*, 55 Fed. Rep. 943; *Carrington* v. *Muller*, 47 Atl. Rep. 564. As the plaintiff himself admits that he knew and

appreciated the danger incident to the work he was doing under the conditions existing, the applicability and the conclusiveness of these authorities are clearly manifest.

In view of the evidence, the principles of law requiring the master to provide a safe place for the servant in which to work, has no application. While the duty to provide a safe place cannot be delegated as is generally held, this does not conflict with the rule which makes the servant assume all risks of which he has knowledge and due appreciation. "The servant assumes the risk of injury, not only from the perils ordinarily incident to his service, but also from special hazards existing because of the particular means or method used by the master in the conduct of his business, of which the servant is informed, or which ordinary care would disclose to him." Labatt, Master & Servant, section 36. In the same section, this author says: "An employer, it is laid down, owes a servant no duty to change the construction and arrangement of his plant in those parts which were in good repair and plainly visible when he entered into the contract of employment. It is one of the implied terms of the contract that the work shall be done with the construction and permanent arrangements which then appeared." This doctrine was asserted by this Court in *Fulton* v. *Crosby-Beckley Co.*, 57 W. Va. 91. In the opinion, the following will be found: "As the employe assumes the risk of all known dangers, though attributable to failure of legal duty in the abstract on the part of the employer, the question of negligence in any given case, depends upon the relation which the master and servant, by their conduct and agreement, have established between themselves with reference to the business in which the servant is employed. This waiver on the part of the servant releases the master from such of the burden which the law, but for it, would impose. Of this, the case in hand affords a good illustration. The railroad, though running over a mountain, crossing ravines, winding around the sides of declivities and, in general, located on ground such as, in the case of an ordinary railroad, would require the use of the best materials, most modern and improved appliances and best construction, conforming in all respects to those rules and principles which experience has shown to be essential to safety in operation, was a crude

affair, lacking in such materials, appliances and construction. All this was necessarily known to the plaintiff, and he assumed the risk of all danger of injury incident to his employment on that road. But the engine and cars were no doubt light, run at a low rate of speed and not heavily burdened, in view of which, the track and road bed were deemed sufficient and reasonably safe, by both employer and employe, notwithstanding the use of inferior materials and crude construction." The principle is applied also in the case of *Williams* v. *Coal & Coke Co.*, cited, and *Giebell* v. *Collins Co.*, 54 W. Va. 518. See also Thompson on Neg., sections 3888, 4697.

As the judgment is plainly wrong, it will be reversed and judgment rendered for the defendant with costs both in this Court and in the circuit court.

*Reversed,* and Judgment for Defendant.