# CHARLESTON.

CHANDLER v. AMERICAN CAR & FOUNDRY CO.

Submitted February 23, 1910.   Decided May 9, 1911.

1.  MASTER AND SERVANT—*Assumption of Risks.*
    The servant assumes the risks of all dangers incidental to
    his employment, whether the work be dangerous or otherwise.
    (p. 393).

2.  SAME—*Injury to Servant—Assumption of Risks.*
    It is the duty of the master to furnish his servant reasona-
    bly safe means and appliances with which to work; but if the
    servant knows the purpose and condition of a particular ma-
    chine or appliance, and undertakes to use it when some of its
    parts are wanting, he assumes the risk of using it in its incom-
    plete condition.   (p. 393).

3.  SAME.
    The servant is not obliged to obey his master's order when it
    exposes him to a known danger; if he does so, he assumes the
    risk.   (p. 394).

4.  SAME—*Injury to Servant—Assumption of Negligence.*
    Negligence by the master is not to be presumed from the mere
    fact of injury to the servant, except in those cases wherein the
    doctrine of *res ipsa loquitur* is applicable.   (p. 395).

Error to Circuit Court, Cabell County.

Action by Garfield Chandler, by his next friend, against the
American Car & Foundry Company.   Judgment for plaintiff,
and defendant brings error.

*Reversed and Remanded.*

*Anderson, Strother & Hughes,* for plaintiff in error.

*Holl & Duncan,* for defendant in error.

WILLIAMS, PRESIDENT:

Plaintiff, a boy twenty years of age, was injured while in the service of defendant company, and sued by next friend in the circuit court of Cabell county, and recovered a judgment for $2,000.00 against defendant, for negligently causing his injury. He was employed to work about the yards of defendant's car shops in the City of Huntington, and, at the time of his injury, he and four other boys were engaged in hauling a truck load of iron angle-bars from a certain place in defendant's grounds to the shops. The angle bars weighed about seventy-five pounds according to plaintiff's testimony; were about nine feet in length, by about five-sixteenths of an inch thick; they had the form of a half open book, and, if flattened out, would be about eight inches wide. They could be easily loaded upon the truck by two boys, one lifting at either end of the bar. The truck on which they were loaded was not over twenty-one inches high, was flat on top, and was drawn by a horse upon tracks laid throughout the yards for that purpose. The angle bars had been hauled to the defendant's yards on the railroad, and thrown off in a pile to be thereafter carried upon the truck to any point about the yard, or buildings, where they might be needed in the manufacture of cars. Plaintiff had been working for defendant only four days; and, at the time of his injury, he and four other boys had been ordered by defendant's foreman to load the angle-bars on the truck, and to take them to one of the shops. Plaintiff testifies that after they had put on what they thought was a sufficient load, the foreman, Mr. Chalmer, told them to put on all that were in the pile, and that they then loaded on the balance of the pile, about fifty more bars; that this made too much of a load for the horse, and that they were then told by the foreman to push on the truck to assist the horse, and did so; that plaintiff was pushing at one side of the truck when they came to a curve in the track which made the car harder to pull; that the horse gave a sudden jerk which jostled the load and caused some of the angle-bars to fall and catch his left hand, severely mashing and lacerating it and cutting off the ends of two of his fingers.

The negligent acts complained are: (1) That defendant

did not provide a proper, safe, and suitable track on which to operate its truck, nor a reasonably safe and suitable truck; that the track was uneven, being lower on one side than on the other, and that the truck was not provided with suitable standards or sideboards. (2) That it did not use proper care in the selection of a foreman of its work, but negligently employed a reckless and incompetent foreman. (3) That it did not use sufficient motive power to draw the truck, that the horse had not the strength to draw it evenly and smoothly when loaded.

As to the first negligence complained of: It appears from the testimony of Bradford Burns, one of plaintiff's witnesses, that there was a sharp curve in the track, and at this place the track was not level, the inner rail being about one inch the lower. The plaintiff himself, when asked what made the iron fall answered: "The horse jerked it (meaning the car) on that curve." The fact that the outer rail of the track at the curve was higher than the inner one, by about an inch, does not show negligence in its construction. The testimony of Bradford Burns is the only proof offered by plaintiff to show that the track was not in a proper condition, and it does not prove it. Moreover, it is proven that plaintiff had hauled other kinds of iron over the track before the accident; and, therefore, it must be presumed that he knew its condition; and knowing the condition of the track, he assumed the risk.

It is admitted that there were no standards, or sideboards, on the truck; and there is conflict in the testimony as to whether the truck was constructed with a view to such appliances. But, assuming that it was provided with a place for standards, and that defendant failed to supply them, that is not such an act of negligence as would make defendant liable for the injury which happened to plaintiff. Plaintiff could foresee the consequences liable to follow from piling the angle-bars on the truck, without standards to support them, as well as anyone else. He assisted in loading the truck, and had as good an opportunity to know whether the angle-bars were piled too high to be safely hauled without standards as anyone else had. We must presume that he possessed ordinary intelligence, and such intelligence is all that was necessary to enable him to anticipate, and to guard against any danger from the angle-bars rolling down upon him. The danger was so obvious and patent that he must be held to

have assumed the risk, as one incidental to his employment. To say that he could not have foreseen the danger would be to charge him with an unusual degree of ignorance. If plaintiff saw that standards were intended to be used on the truck, and undertook to use it without them, he assumed the risk. 1 Labatt on Master & Servant, sec. 265. This court said: "A servant having knowledge of danger to himself must use diligence and care to protect himself from harm." *Knight* v. *Cooper,* 36 W. Va. 232.

The only evidence tending to prove that defendant was negligent in not providing a competent foreman is, that the foreman ordered plaintiff and his co-laborers to put on all the angle-bars in the pile, after they thought the truck had been sufficiently loaded. Granting that it was an error of judgment in the foreman to give this order, still it is not sufficient to prove negligence by defendant in employing him. But even if it had been proven that the foreman was not competent, and that defendant knew it, or should have known it by the exercise of reasonable diligence, still it was necessary to prove that his incompetency was the proximate cause of the injury; and this plaintiff has not done. *Core* v. *Railroad Co.,* 38 W. Va. 456; Bailey's Masters Liability, 70. The consequences liable to follow from the overloading of the truck, and then undertaking to push against it to help the horse, were as well known to plaintiff as they were to the foreman; and if plaintiff thought it was dangerous to obey these orders of the foreman, he was not compelled to do so; in obeying the orders he assumed the risk of known dangers. 1 Labatt on Master and Servant, sec. 442.

The foregoing argument also applies to show that plaintiff assumed the risk of such accidents as were likely to follow from the use of a horse to draw the truck.

The direct and proximate cause of plaintiff's injury was the piling of too many angle-bars on the truck, and then undertaking to push it after it was heavily loaded, and taking a dangerous position by the side of the truck where the iron in falling would fall upon him. These were plaintiff's own acts; everything which contributed to his injury was open and visible, and according to the evidence now before us, he must be regarded as being fully cognizant, at the time, of all accidents likely to

result from the use of the means and appliances employed in the work at which he was engaged, and to have assumed the risk of such accidents. The means and appliances, according to the evidence, were all reasonably safe; the injury resulted from plaintiff's own lack of proper care. The master is not an insurer of his servants against injury; and "the mere fact of injury received by a servant raises no presumption of negligence on the part of the master." *Knight* v. *Cooper,* 36 W. Va. 232; *Richards* v. *Iron Works,* 56 W. Va. 526.

Plaintiff's work was easy, and the instrumentalities used, a truck to be drawn upon tracks by a horse, were of the simplest kind; and plaintiff must be held to have assumed the risk of the accident which resulted in his injury; it was an incident of his employment. He has failed to prove even a *prima facie* case of negligence against defendant.

In view of what we have said it was error to refuse defendant's peremptory instruction to find in favor of defendant.

It was not error to refuse defendant's instructions Nos. 7 and 8. Because they relate to the failure to warn against danger; and it is not averred in the declaration that defendant was negligent in failing to warn plaintiff of the danger incident to the work at which he was engaged. True, there is some evidence in the case tending to prove that defendant's foreman had told plaintiff not to push at the side of the loaded truck, but this evidence was wholly irrelevant, inasmuch as the declaration does not aver that defendant was negligent in that regard. In view of the want of such an averment in the declaration, instruction No. 8 becomes a question of abstract law, and it was not error to refuse it.

The judgment of the lower court will be reversed, the verdict set aside, and, in view of the fact that we are unable to see that plaintiff may not be able to make out a better case on another trial, we will remand the case for a new trial.

*Reversed and Remanded.*