# CHARLESTON.

## ASHLEY v. TRI-STATE LUMBER CO.

### Submitted February 20, 1917.  Decided March 6, 1917.

1. TRIAL—*Demurrer to Evidence—Writing.*

    The rules of practice require that a demurrer to evidence be reduced to writing, and that all of the evidence submitted be incorporated therein.  (p. 728).

2. SAME—*Demurrer to Evidence—Incorporation of Evidence—Waiver.*

    Where, at the conclusion of the evidence introduced in a case, the defendant demurrs orally thereto, and the court permits such oral demurrer to be filed, and the plaintiff without objection joins therein, and there is subsequently filed a certificate of the evidence which was introduced upon the trial, properly certified by the judge, it will be held that the requirement that the demurrer should be in writing has been waived, and this Court will consider the case as though the demurrer to the evidence had been formally entered. (p. 728).

3. MASTER AND SERVANT—*"Assumption of Risk"—Knowledge.*

    Ordinarily a servant who, with full knowledge of a defect in machinery or appliances with which he is working, and with a clear understanding of the result of the operation thereof in such defective condition, continues in the service with such defective machinery or appliances, will be held to have assumed the risk from an accident occasioned thereby.  (p. 731).

4. SAME—*Assumption of Risk—Promise to Repair.*

    A servant who complains to the master of defects in machinery or appliances with which he is working, and receives the promise of the master to repair such defects, will not be held to have assumed the risk arising from the operation of such machinery or ap-

pliances in such defective condition, where an injury occurs to him therefrom within a reasonable time after the making of such promise to repair, unless such servant fails to exercise reasonable care in doing the work, or unless the danger is so palpable, immediate and constant that only a reckless person would expose himself thereto.   (p. 731).

Error to Circuit Court, Nicholas County.

Action by Arch Ashley against the Tri-State Lumber Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*E. C. Lewis, Brown & Eddy* and *Stewart & John,* for plaintiff in error.

*Alderson & Breckinridge* and *John McButcher,* for defendant in error.

RITZ, JUDGE:

This writ of error is prosecuted to a judgment of the circuit court of Nicholas county in favor of the plaintiff rendered upon a demurrer to the evidence.  The defendant company was operating in connection with its business of producing lumber a lumber railroad.  It had completed its operations at the place where the accident occurred out of which this suit grows, and was taking up the track.  The plaintiff was a locomotive engineer in the employ of the defendant, and at the time of the accident his engine with a car in front of it was being used to take up'that part of the track which had been abandoned.  This abandoned track was upon a steep grade and in taking it up the steel rails were loosened in front of the car at the end of the track furthest from the center of operations, and were placed upon the car, and then the engine and car were moved further down the hill, so as to permit of more rails being taken up and loaded.  At the time of the accident there had been loaded on the car fifty-seven of these steel rails, and the engine with the car in front of it had just been moved down the hill by the plaintiff for the purpose of permitting some additional rails to be taken up and loaded on the car to complete the load, which load was to consist of sixty rails.  After

the engine was stopped on this occasion the plaintiff got off, as it was his duty to help take up the additional three rails and load them on the car. Shortly thereafter the engine and car started down the grade. The plaintiff, observing this, jumped upon the car and got into the engine for the purpose of doing what he could to prevent the runaway. Finding that he was unable to stop the engine and car he jumped from the engine, and just as the car with the rails on it passed the place at which the plaintiff had jumped it became derailed and wrecked, and a number of the rails were thrown upon the plaintiff, severely injuring him. The locomotive was derailed a short distance from the car and turned over on its side.

Plaintiff asserts his right to recover for the injury he sustained on this occasion upon several grounds. He contends that the throttle valve of the engine which he was operating was leaking, and that by reason of this leak the engine and car were started down the hill on the occasion of the runaway. He contends also that the car was overloaded at the time; that the car had a defective wheel and defective coupling; that it was negligence in the defendant company to instruct him to assist in loading the rails and in not requiring him to remain on his engine while it was standing still; that there was negligence in not furnishing a conductor to be in charge of the train; and that there was negligence in not furnishing an experienced foreman to be in charge of the work.

At the conclusion of the evidence the defendant demurred thereto orally, the court received such oral demurrer, and the plaintiff without objection joined therein. Upon this demurrer the jury rendered a conditional verdict and the court found for the plaintiff thereon and rendered judgment in his favor.

The court below gave as his reason for overruling defendant's demurrer to the evidence and rendering judgment for the plaintiff the failure of the defendant to furnish a typewritten copy of the evidence. This oral demurrer to the evidence was received without objection, and the plaintiff without objection joined therein. It appears from the rec-

ord that the evidence had been taken down by an official reporter of the court, and such being the case it was within the power of the court under the law to secure a transcript of the evidence if he desired it.   Under the rules of practice a demurrer to the evidence is required to be in writing and to contain all of the evidence introduced upon the trial of the issue, and the defendant connot be compelled to join in such demurrer unless it is so reduced to writing, and the evidence incorporated therein.   However, where the court permits such demurrer to be filed orally, and the plaintiff without objection joins therein, the requirement that the, same be reduced to writing will be waived, and where a certificate of the evidence is subsequently furnished and properly certified by the circuit judge, as was done in this case, it will be treated in this court as part of the oral demurrer, and such demurrer considered upon its merits.

That the locomotive which the plaintiff was operating at the time of the accident was equipped with a throttle valve that leaked is admitted.   It is also admitted that the company knew of this for some time before the accident; that it had been called to the attention of the superintendent of the company by the plaintiff himself when he took charge of the locomotive some three months before the injury; that at the time the plaintiff called attention to this defect the superintendent of the company advised him that the company did not desire to make any expenditures that were not absolutely necessary, and that he would try to get another throttle valve from some of the other operations of the company; that subsequently another throttle valve was procured, but that it would not fit the engine, and that the old one was continued in use thereon, and was so in use at the time of the accident.   It seems that efforts had been made to secure the necessary fittings to correct this defect up to the time of the accident, but such efforts had not been successful.   The plaintiff admits that he was fully informed of this defective condition of the throttle valve, and knew the result of this defect upon the operation of the engine.   It further appears from his testimony that he operated the engine in this condition and with this knowledge.   It is further shown that

when the car jumped the track a piece of the flange was broken out of one of the wheels, and that the coupling of the car was broken. This is the only evidence upon which to base the charge that there was a broken wheel upon the car, and that the coupling was defective. From the fact alone that a piece was broken from the flange of one of the wheels when the car was wrecked, and that the trucks of the car were found disconnected after the wreck, it cannot be assumed that there was any defect in the car wheel, or in the coupling prior to the accident. Just such damage as this would be the natural result of the derailment of the car running at high speed down a heavy grade. It is also contended that the car was overloaded. The undisputed evidence is that the car had a capacity of twenty thousand pounds; that it had on it at the time of the accident fifty-seven steel rails weighing three hundred pounds each; and that the purpose was to load thereon sixty of such steel rails, making a total load of eighteen thousand pounds, or two thousand pounds less than the capacity. The assumption that the car was overloaded is based upon the fact that it ran away. Of course, if it had had a lighter load upon it, it would have been easier to control; and it might be said that it would not have started on the grade, but from this we cannot say that the car was overloaded. It would have been safer to operate the car without any load. There is nothing to show that there was anything unsafe in operating the car loaded to its capacity of twenty thousand pounds under the circumstances. Several witnesses, deducing their conclusions from the fact that the car ran away, state that it was overloaded, but it does not appear from any evidence that the car was not entirely sufficient to be loaded to its capacity. Nor can we see how the failure to have a conductor in charge of the train, or a foreman in charge of the loading of the rails, contributed to the accident. The fact that plaintiff, as a part of his duties, was required to assist the remainder of the crew when his engine was not running, is charged as negligence, it being assumed that if he had been required to remain on his engine at all times the accident would not have happened. He shows that he was fully informed as to the probable re-

sults of the leaky throttle valve, and if there was danger in allowing the engine to stand with no one on it he was fully advised thereof, and by continuing in the service under these circumstances he assumed the risk of injury from accident resulting from this cause.

After a careful review of the evidence we are forced to the conclusion that this accident was caused by the engine being started by steam leaking into the cylinders because of the leaking throttle valve. The plaintiff, who appears to have a more intelligent conception of the accident than any one else present, attributes it to this cause, and explains how the leaky valve operated so as to cause the engine and car to run away. Counsel for the defendant argues that in as much as the plaintiff testifies that he left his engine in such a condition that it would go forward in case of steam escaping into the cylinder, this could not have caused the running away of the car and engine on this occasion. This does not necessarily follow. We think that even though the reverse lever of the engine was set so as to have a tendency to propel the engine forward in case the steam leaked into the cylinder that such movement of it forward in this case had the effect of agitating the loaded car which was then standing still, and it was the shaking or agitation of the car from the movement of the engine that caused it to start and move down the hill. Finding that the accident resulted from this defect in the throttle valve of the engine the defendant company would be liable for the resultant injury to the defendant, unless he assumed the risk of injury to himself on this account by remaining in the service, or unless he was guilty of contributory negligence in jumping on the engine after it had started to move. We cannot say as matter of law that the plaintiff was guilty of contributory negligence in boarding the moving engine and attempting to stop it under the emergency that existed.

This leaves for consideration the question of the assumption of the risk by the defendant of injury from this defective machinery. As before shown, the facts in regard to the plaintiff's knowledge of the defect, and the result of this defect upon the movement of the engine, are admitted by him

in his testimony; and the defendant contends that by remaining in the employment of the company and operating this engine with full knowledge of what was likely to result because of this defect, and which did result because thereof, the plaintiff assumed the risk of injury from the very cause which produced his injury. In *Chandler* v. *Car & Foundry Co.*, 69 W. Va. 391, it was held: "It is the duty of the master to furnish his servant reasonably safe means and appliances with which to work; but if the servant knows the purpose and conditions of a particular machine or appliance, and undertakes to use it when some of its parts are wanting, he assumes the risk of using it in its incomplete condition."

In *Laverty* v. *Hambrick*, 61 W. Va. 687, it was held: "By entering upon, and continuing in, service in an unsafe place, the dangers of which are known and fully appreciated by him, a servant waives the performance by the master, of the duty imposed upon him by law in respect to the safety of the place in which the service is performed." Judge POFFEN-BARGER in the opinion of the Court in that case, p. 691, says: "As the plaintiff himself admits that he knew and appreciated the danger incident to the work he was doing under the conditions existing, the applicability and the conclusiveness of these authorities are clearly manifest." This quotation has peculiar application to the conditions existing in this case. The same doctrine is announced in the case of *Jones* v. *Railway Co.*, 74 W. Va. 666. Many cases might be cited to support this doctrine, but it is so uniformly applied by the courts that a multiplication of authorities is deemed unnecessary.

This leads to a reversal of the judgment of the circuit court, unless the plaintiff is relieved of the assumption of risk upon his part by the promise of the master to repair the defective throttle valve. Upon this question the plaintiff testifies that when he went to work with the engine he called the attention of the superintendent to this leaking throttle valve, and that such superintendent then informed him that the company did not desire to make any expenditures except such as were absolutely necessary, and that he would send to another operation of the company and get a throttle to

take the place of the one out of order; that sometime after this the throttle sent for came; that when they attempted to apply it to the engine they found that it could not be properly applied because of some fixtures that were missing; that the superintendent then told the plaintiff to continue working with the engine, and that he would send to an operation of the company at Tioga and get these missing fixtures; that a short time before the accident the plaintiff was informed by the superintendent of the company that he was unsuccessful in getting the needed fixtures at Tioga, but that he would send for them to the office of the company at Uniontown, Pennsylvania. This was only a short time before the accident.

The plaintiff contends that this promise upon the part of the defendant company, made to him when he took charge of the engine and repeated on the subsequent occasions, to repair the defect, had the effect of relieving him from the assumption of risk. He states in his evidence that he relied upon the defendant doing what its superintendent promised, and his conduct in inquiring about the receipt of the new throttle and the necessary fixtures to apply it to the engine corroborates him in this regard.

In *Parfitt* v. *Veneer & Basket Co.*, 68 W. Va. 438, the law upon this question is laid down by this Court in the following language: "One of said instructions, covering the concrete case, properly told the jury, that if they found from the evidence that plaintiff 'complained of the defective and dangerous condition of the machinery and appliances which he was operating, and that the defendant   *   *   *   promised to have the defects in said machinery remedied and the danger removed, but failed so to do within a reasonable time and in consequence thereof the injuries complained of were inflicted upon the plaintiff, then the defendant company is liable, and the jury should find for the plaintiff, unless the jury believe that the plaintiff failed to exercise reasonable care and caution in doing the work in which he was engaged, taking into consideration the plaintiff's experience, or unless the danger was so palpable, immediate and constant that no one but a reckless person would expose himself to it, even after receiving such promise or assurance.' "

In order to relieve the servant from the assumption of the risk of injury by reason of a promise of the master to repair it must appear that the master, or someone authorized to represent him, made such a promise, and that the servant continued in the employment believing that the master would perform the promise. Labatt on Master & Servant, §1342.

The rationale of the doctrine seems to be that, when the master, upon complaint by the servant of the defective condition of machinery or appliances, promises the servant to repair the same, he thereby assumes any risk, at least for a reasonable time, because of such defect, and relieves the servant from such assumption for such reasonable time. The master desires his work to proceed, and it may be well said that he is willing to take upon himself the additional risk of conducting it with the defective machinery in the belief that his interests are better promoted by keeping the work in progress than it would be by discontinuing the use of the defective machinery until the repairs can be made. *Dempsey* v. *Sawyer*, 95 Me. 295 (49 Atl. 1035) ; *Railroad Co.* v. *Holman*, 90 Ark. 555 (120 S. W. 146) ; *Swift* v. *O'Neill*, 187 Ill. 337 (58 N. E. 416) ; *Morden Frog & Crossing Works* v. *Fries*, 228 Ill. 246 (119 Am. St. Rep. 428) (81 N. E. 862) ; *Scott* v. *Parlin & O. Co.*, 245 Ill. 460 (92 N. E. 319) ; *Altman* v. *Schwab Mfg. Co.*, 54 Misc. 243 (104 N. Y. Supp. 349) ; *A. L. Clark Lumber Co.* v. *Johns*, 98 Ark. 211 (135 S. W. 892) ; *Brouseau* v. *Kellogg Switchboard & Supply Co.*, 158 Mich. 312, 27 L. R. A. (N. S.) 1052 (122 N. W. 620) ; *Holmes* v. *Clarke*, 6 Hurlst. & N. 349 (30 L. J. Exch. N. S. 135) ; *McFarlan Carriage Co.* v. *Potter*, 153 Ind. 107 (53 N. E. 465) ; *Schlitz* v. *Pabst Brewing Co.*, 57 Minn. 303 (59 N. W. 188) ; *Texas & N. O. R. Co.* v. *Bingle*, 9 Tex. Civ. App. 322 (29 S. W. 674) ; *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573 (36 N. E. 572) ; *Eureka Co.* v. *Bass*, 81 Ala. 200 (60 Am. Rep. 152) (8 So. 216) ; *Pleasants* v. *Raleigh & A. Air Line R. Co.*, 95 N. C. 195 ; *Ray* v. *Diamond State Steel Co.*, 2 Penn. (Del.) 525 (47 Atl. 1017) ; *Greene* v. *Minneapolis & St. L. R. Co.*, 31 Minn. 248 (47 Am. Rep. 785) (17 N. W. 378) ; *Bruns* v. *North Iowa Brick & Tile Co.*, 152 Iowa 61 (130 N. W. 1083) ; *Pavan* v. *Worthen &*

*A. Co.,* 80 N. J. L. 567 (78 Atl. 658); *Clarke* v. *Holmes,* 7
Hurlst. & N. 937; *Hough* v. *Ry. Co.,* 100 U. S. 213; Labatt on
Master & Servant, §1438.

From these authorities it seems to be well established that,
where a servant complains to the master of defects in the
machinery with which he is working, and the master promises
to repair such defects, the servant will not be held to have
assumed the risk of injury from an accident caused by such
defects within a reasonable time after such promise to re-
pair.  Many of the courts say that by making this promise
the master entered into a new contract with the servant by
which he agrees if the servant will continue in the employ-
ment with the defective machinery, that the master will as-
sume any risk of injury because thereof, and it seems to us,
both from reason and authority, that this is an intelligent
reason for the rule.  However this may be, the authorities,
with little or no dissent, hold that the servant does not as-
sume the risk of injury by continuing in the employment
with defective machinery or appliances, which the master
has promised to repair, until after the expiration of a reason-
able time within which to make such repairs.  Applying this
rule to the facts in this case we conclude that the plaintiff did
not assume the risk of injury; that he had a right to rely upon
the repeated statements of the superintendent of the defend-
ant company that the repairs would be made to the engine;
and that he did rely thereon is shown not only by his state-
ments to that effect, but by his conduct as well.

The judgment complained of will be affirmed.

*Affirmed.*