## Wytheville.

MASON AND PERKINS, RECEIVERS, *v.* POST.

June 14, 1906.

1. MASTER AND SERVANT—*Obvious Danger—Contributory Negligence—
   Street Railways—Case at Bar.*—A motorman on a street car, al-
   though his car has the right of way and he is acting under orders
   of his conductor, cannot go forth to meet a car approaching on the
   same track from an opposite direction at a high rate of speed, and
   in full view for over half a mile, and continue his course, regard-
   less of the heedlessness of those in charge of the approaching car,
   until a collision is inevitable, and then recover from the company
   damages for the hurt received in the collision. His own contribu-
   tory negligence bars a recovery. He was under no obligation to
   obey an order which he knew would result in a collision. A servant
   cannot escape the result of his own contributory negligence on the
   ground that he is acting under orders from the master, when
   obedience to those orders involves exposure to danger so mani-
   fest that no prudent person would incur the risk.

Error to a judgment of the Circuit Court of Elizabeth City
county in an action of trespass on the case. Judgment for the
plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*R. G. Bickford* and *S. O. Bland,* for the plaintiff in error.

*F. S. Collier* and *O. D. Batchelor,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

In this action, which was brought to recover damages for personal injuries, plaintiffs in error complain of the action of the trial court in overruling their demurrer to the evidence and rendering judgment against them for the damages assessed by the jury.

For brevity the defendant in error will be hereafter referred to as the plaintiff and the plaintiffs in error as the receivers.

Most of the argument has been addressed to the point whether a street railway comes within the influence of an act of the General Assembly, approved March 27, 1902 (Acts 1901-'02, p. 335), and of section 162 of the Constitution modifying the fellow-servant doctrine as previously established in this State. But we are of opinion that whatever view might be taken of that question the undisputed evidence establishes such contributory negligence on the part of the plaintiff as to bar a recovery.

The controlling facts in the case, considered from the standpoint of a demurrer to the evidence, are as follows: The plaintiff, while serving in the capacity of motorman, was injured in a collision between cars No. 6 and No. 9 of the Hampton Roads Railway and Electric Company, which was being operated by the defendants as receivers appointed by a decree of the Circuit Court of the United States for the Eastern District of Virginia. The road is an urban and interurban line, located upon the streets and avenues of the city of Newport News, and extending thence by way of the town of Hampton to Buckroe Beach, a seaside resort on Chesapeake Bay. On the morning of the accident the plaintiff left the car-barn with car No. 9 and proceeded on his run toward Newport News, reaching the point of intersection between Lincoln and King streets, in the town of Hampton, on schedule time. This car had the right of way from King street over Lincoln street, a distance of 3,420 feet, to a turnout,

or passing switch, at Lee's corner, twenty or thirty feet from Lincoln street, at which point it was the duty of the east-bound car, No. 6, to remain until No. 9 had passed. Before leaving the east side of King street, a place of safety, plaintiff saw car No. 6 turn Lee's corner into Lincoln street, distant about two-thirds of a mile, and remarked to his conductor that the other car was "coming through"; whereupon the conductor replied, "Go ahead; we are on time, and can't run back for him." · At that time plaintiff was in full view of car No. 6, and saw that it was coming down Lincoln street at a high and increasing rate of speed; and with full knowledge of that fact and that there was no intervening turnout, he put his car in motion and advanced towards the approaching car at the rate of five or six miles an hour, sounding his gong, and with the intention of forcing the offending car to return to Lee's switch and allow him to pass. Plaintiff continued to move forward, though he perceived that the other car, in disregard of his right of track and in violation of the rules of the company and the speed ordinance of the town, was rushing down upon him at full speed; and made no effort to escape from the perilous position in which he had placed himself, but persisted in his purpose to force the other car back until he observed the motorman on the opposing car standing with his hands behind him talking with the conductor and paying no attention whatever to his signals. Then, for the first time, when the cars were within a car's length of each other and a collision inevitable, he attempted to escape by reversing his course.

The plaintiff undertakes to justify this extraordinary conduct on the theory that he was entitled to the right of way, and was obeying the orders of his conductor, and had received general instructions from the superintendent of the company to arrive with his passengers (for the most part employees of the

shipyard) at Newport News on time, and not to allow other cars to run him back. Also, that he had the right to assume that the motorman on the opposing car would abate his speed to eight miles an hour, as required by the rules of the company and the ordinance of the town, and approach him with his car under control, and, recognizing plaintiff's superior right, would return to the switch and permit him to pass. But it is manifest that his position is indefensible.

A due regard for the safety of his passengers, as well as for his own safety, forbade that he should place them in a position of peril on the illusive theory that tort feasors, who had demonstrated a contrary purpose by their every act, would suddenly awaken to a sense of duty and avert the consequences of his own folly. His knowledge of the impending danger deprives him of all that he alleges in excuse for his conduct. He knew that the crew of the opposing car were violating the rules of the company in leaving Lee's switch in advance of their schedule, and that they were "coming through," for so he informed the conductor, and at a high rate of speed. Yet, with that knowledgde, he left a place of safety under the alleged fanciful belief that the offending car would moderate its speed and retrace its course, leaving the way open to him to proceed, a delusion to which he adhered almost to the moment of impact. As well might an engineman on an ordinary railroad, with visual knowledge that an opposing train was approaching at full speed over a single track, seek to excuse himself for a collision occasioned by his going forth to meet it, because, forsooth, he had the right of way and was acting under orders from the conductor.

Both the conductor and motorman are responsible for the safety of their passengers and cars, and must take every reasonable precaution for their protection; and it is a well settled principle, one which is usually embodied in the rules and regulations

for the government of the operating department of all railways, that an engineman is under no obligation to obey an order of a superior officer which he knows will endanger the safety of passengers and the train.

To uphold the recovery in this case would tend to encourage negligence, and, against public policy, to reward the plaintiff for needlessly and recklessly jeopardizing his own life and the lives of passengers, and exposing to injury property committed to his care.

It is an established doctrine of the law governing the relations of master and servant that a servant cannot escape the result of his own contributory negligence on the ground that he is acting under orders from the master, when obedience to those orders involves exposure to such apparent danger that no prudent person would incur the risk.

This general principle finds expression in all standard text-books on the subject and numerous decisions of courts of last resort. Reference to the following may be made by way of illustration:

"Upon general principles it is manifest that, although the servant may have been directly commanded or urged to undertake the work from which the injury resulted, he cannot claim an indemnity where the danger to be encountered was at once so obvious and so serious that no prudent man would have incurred it. That is to say, the order must, if it is to serve as a justification, be in a matter with regard to which the servant has a right to rely on the superior judgment of the master.

"The courts decline to lay down a rule of law purporting to define accurately how dangerous a proposed action would have to be before a servant receiving an order from his master to perform it would be required to disobey, under pain of being chargeable with negligence. But where there is no dis-

pute as to the facts, and the dangers of obedience to an order are as apparent to the servant as to the employer's representative, there is no occasion to go to the jury to determine whether the servant should have obeyed the order." 1 Labatt on Master & Servant, sec. 442.

"Where an order is given by a fireman to a brakeman to uncouple cars in motion, under such circumstances that, by complying therewith, he would incur risks of obvious peril, such as a reasonably prudent man would regard as extra hazardous, if obeyed, the employee in obeying assumes the risk himself." *Davis* v. *Western Ry. of Ala.,* 107 Ala. 626, 18 So. 173.

"An instruction that 'the law requires the master to exercise reasonable care in selecting safe tools and appliances, which the master is required to furnish for his servants' use in his employ; and although a tool may be of doubtful safety and although its character may be as well known by the servant as the master, yet if the master, knowing the defect, or if he could have known it by the exercise of due diligence, commands, urges or induces the servant to so use the tool, and the servant is injured by the use of it while exercising due care in his own behalf, then," etc., *held,* erroneous in not adding the proviso to the rule, that if the tool or implement was so obviously insufficient that no prudent man would have used it, then there could have been no recovery." *Moline Plow Co.* v. *Anderson,* 19 Ill. App. 417.

"Under the facts, as disclosed by the record, there was no error in granting a non-suit in this case. The facts show, in brief, that the plaintiff undertook to get upon an engine which was running at the rate of from six to twelve miles per hour. It seems to us that any man of common sense would have known that it was a rash and dangerous attempt. It is

claimed, however, that he was justified because he was ordered to do so by his boss or superior. The evidence does not show that the boss ordered him to get on the engine while it was moving at this rate of speed; and the action of the plaintiff shows that he did not so understand the order, because he gave the engineer a signal to stop, and the engineer either not seeing the signal or not heeding it, did not stop, and the plaintiff then undertook to mount the engine as it ran past him. Even if the boss had ordered him to get upon the engine while it was moving at this rate of speed it would not have protected the plaintiff, because the act was so rash and dangerous that he was not obliged to obey such an order, and if he did so it would be at his peril." *Roul* v. *Ry. Co.,* 85 Ga. 199, 11 S. E. 558.

"Where a foreman and his assistant have equal knowledge of the danger accompanying an act about to be performed, even if the foreman requests its performance, and injury ensues to the assistant, the employer cannot be made liable; such performance being optional with the assistant, who takes his chances of the perils surrounding the situation. In such a case, where there is no dispute upon the facts, there is no occasion to go to the jury to determine whether the assistant ought to have obeyed such order.

"When plaintiff entered the service of the defendant he assumed not only the usual and ordinary risks and perils of the service, but also such other risks as became apparent by ordinary observation." *Kean* v. *Detroit Copper, &c., Mills,* 66 Mich. 277, 33 N. W. 395, 11 Am. St. Rep. 492.

"If a servant obeys the master's order to go into a place that is so obviously dangerous that a prudent person, though acting in his capacity, would not obey it, he will be guilty of contributory negligence, which will defeat a recovery for an

injury resulting therefrom." *Shortel* v. *City of St. Joseph,*
104 Mo. 114, 16 S. W. 397, 24 Am. St. Rep. 317.

"A servant is not bound, under all circumstances and at
all hazards, to obey the orders of his master.   He cannot re-
cover damages of the master for injuries received while obey-
ing the latter's order, if he had time to deliberate and volun-
tarily and with knowledge of the peril placed himself in a
position in which he was more than likely to be injured." *Mc-
Dermott* v. *Hannibal, &c., Ry. Co.,* 87 Mo. 285.

"While the servant assumes the ordinary risks of his em-
ployment, and, as a general rule, such extraordinary risks as
he may knowingly and voluntarily see fit to encounter, he does
not stand upon the same footing as the master as respects the
matter of care in inspecting and investigating the risks to which
he may be exposed.   He has a right to presume that the master
will do his duty in that respect, so that, when directed by
proper authority to perform certain services, or to perform
them in a certain place, he will ordinarily be justified in obey-
ing orders without being chargeable with contributory negli-
gence or with the assumption of the risks of so doing.   This
proposition is, however, subject to the qualification that he must
not rashly and deliberately expose himself to unnecessary and
unreasonable risks which he knows and appreciates." *Cook*
v. *St. Paul, &c., Ry Co.,* 34 Minn. 45, 24 N. W. 311.

In *B. & P. R. Co.* v. *Jones,* 95 U. S. 439, 24 L. Ed. 506, the
syllabus is as follows:

"Negligence is the failure to do what a reasonable and pru-
dent person would ordinarily have done under the circumstances
of the situation; or doing what such a person under the ex-
isting circumstances would not have done.   The duty is dic-
tated and measured by the exigencies of the occasion.

"Plaintiff held not entitled to recover for any injury which
he received while riding on a pilot of a locomotive, where he

had been forbidden to ride, there being room for him in a box car attached."

The plaintiff was one of a number of laborers engaged in constructing and repairing the roadway of the railroad company, and the company was in the habit of carrying them to and from work, sometimes with locomotive, tender and box car, and sometimes with only locomotive and tender; in either case some of the men usually rode on the pilot of engine, though they had been warned not to do so. On the day of the accident there was a car attached to the engine, and plaintiff was told by the foreman to jump on anywhere, that the train was late and he must hurry. He got on the pilot and was injured in a collision, while those on the car escaped. *Held:* Assuming that the collision was the result of the negligence of the railroad company, that plaintiff's injury was due to his own recklessness and folly, as he should have been in the box car. In the opinion it is said: "The plaintiff had been warned against riding on the pilot and forbidden to do so. It was next to the cow-catcher, and obviously a place of peril, especially in case of collision. There was room for him in the box car. He should have taken his place there. He could have gone into the box car in as little, if not less time, than it took to climb to the pilot. The knowledge, assent, or direction of the company's agents as to what he did is immaterial. If told to get on anywhere, that the train was late, and that he must hurry, this was no justification for taking such a risk. . . . The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter the former could not arise."

For the foregoing reasons, we are of opinion that the circuit court erred in overruling the demurrer of the receivers to the evidence, for which error its judgment must be reversed; and this court will enter such judgment as that court ought to have rendered.                    *Reversed.*