# CHARLESTON.

## ADAMS *v.* CHESAPEAKE & OHIO RY. CO.

Submitted December 9, 1913.   Decided February 13, 1914.

1. MASTER AND SERVANT—*Assumption of Risk—Minor Servant.*

    A minor servant, though fourteen years old or over and presumptively capable of recognizing and appreciating danger, is not held as matter of law to have assumed the risk of injury incident to his employment, except in very plain cases, unless his knowledge of the danger and means of avoiding it affirmatively appears or warning thereof and instruction as to provision against it are shown to have been given by the master.   (p. 699).

2. SAME—*Assumption of Risk—Liability of Master.*

    The danger incident to unreasonably long service without sleep, at night, without a light and about a double-track railroad on which trains are passing in both directions, required of such a servant, is attended by a peculiar risk of injury, due to the tendency of long service and deprivation of sleep to dull the mental faculties and weaken the powers of observation, which he is not held as matter of law to have assumed, in the absence of proof of warning thereof and instruction as to means of avoidance or previous service of such length without sleep or some other fact from which knowledge of the peculiar danger and assumption of the risk can be inferred.   (p. 700).

    (ROBINSON and WILLIAMS, JUDGES, dissenting.)

Error to Circuit Court, Cabell County.

Action by Fannie Adams, administratrix, etc., against the Chesapeake & Ohio Railway Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Enslow, Fitzpatrick, Alderson & Baker,* for plaintiff in error.

*Wilson & Livezey* and *Neal & Strickling,* for defendant in error.

POFFENBARGER, JUDGE:

The principal assignments of error in this case, the overruling of the demurrers to the original and amended declarations and the motion to set aside the veridct and refusal to direct a verdict for the defendant, raise an inquiry as to

whether a master is liable for the death of a servant, resulting from compliance with the master's requirement of service for an unreasonably long·time without sleep or rest, producing dullness of the mental faculties and a weakening of the powers of observation. The verdict and judgment are for $2,000.00.

That such conduct on the part of a master imposes liability for the injury or death of the servant has been judicially affirmed in the following cases: *Pennsylvania Co.* v. *Mc-Caffrey,* 139 Ind. 430; *Republic Iron &c. Co.* v. *Ohler,* 161 Ind. 405; *Railway Co.* v. *Couture,* 14 Queb. K. B. 316, 7 A. & E. Ann. Cas. 190. Under the statutory New York labor laws, there is such liability. *Pelin* v. *Railroad Co.,* 102 N. Y. App. Div. 71, 92 N. Y. Supp. 468.

This is a new doctrine, or possibly a new application of old doctrine, but it seems to accord with general legal principles, since the law imposes a peculiar duty upon masters in favor of minor servants, on account of their inexperience and inability to appreciate danger. One who employs a minor and places him to work in a dangerous place is under a duty to apprise him of the danger and show him how to avoid it, except in very plain cases of obvious danger, and the younger the servant the higher the duty of the master. A minor servant over the age of 14 years is presumed to have capacity, after having been properly instructed, to appreciate danger and know how to avoid it. If he is under the age of 14 years, there is a presumption of inability to do so, which, in the case of injury, the employer must overcome with proof, if he would escape liability. It would be illogical and unreasonable as well as contrary to common knowledge, to say such incapacity cannot result from causes other than youthfulness. It would be equally at variance with reason and common knowledge to say it cannot result from fatigue and loss of sleep. Of course there is this difference: in the case of an adult, he is in the full possession of his mental powers at the beginning of the service and may be supposed to have anticipated and assumed the risk of impairment, inevitably consequent upon service of unreasonable length and deprivation of sleep or food for an unreasonable time. However, there is no occasion here to say whether, under any circumstances, there is liability for injury or death to an adult servant on this ground. As

shown by the declaration and proof, the plaintiff's decedent was only 17 years old, wherefore it was the duty of his employer to apprise him of all dangers connected with his work or incident to his service, of which he did not have knowledge. No ground upon which to distinguish the danger from overwork and loss of sleep of the servant from other dangers attendant upon it is perceived. A minor, though over 14 years of age, is not deemed in law to have assumed the ordinary risk incident to his employment. Ordinarily, it is presumed he did not, and, to bar recovery on that ground, there must be specific and positive evidence showing the risk of the injury incurred was, as a matter of fact, comprehended. Where minors are concerned, ordinary risks are, for evidential purposes, always treated at the outset of the inquiry as extraordinary, and the burden of establishment of the servant's comprehension of the particular risk, rests upon the employer. *Williams, Adm'r,* v. *Coal & Coke Co.,* 55 W. Va. 84, 101. See also *Giebel* v. *The Collins Co.,* 54 W. Va. 518.

The salient allegations of the declaration are as follows: Plaintiff's decedent, a youth of 17 years, was employed by the defendant as a section hand and working as such near the town of Milton. At that point, the defendant's double track railroad ran through a cut, the sides of which were slipping and obstructing the tracks. On Feb. 28, 1910, the deceased servant was required to work in this cut, removing mud, earth and other materials from the tracks, from six o'clock or seven o'clock in the morning until six o'clock the next morning, and was not furnished a lantern for use during the night. While this work was going on, defendant's trains were passing each way along the tracks, and, at about 4 o'clock on the morning of March 1st, after he had worked 21 hours consecutively and when he was fatigued and worn out and his mental faculties dulled by the long service, he was run over and killed by a train. He had been in the employment of the defendant for about 20 days at the time of his death, but it does not appear whether he had been previously required to work at night or in the cut in which he was killed, and he was not instructed as to the danger incident to his work and means of avoiding it.

As the declaration need not do more than point out, with reasonable certainty, the grounds of negligence or means by

which the injury was inflicted, many additional facts, subsidiary in character, but material and relevant, are admissible in evidence under these general allegations. The degree of care to be exercised in the employment and use of an infant or minor servant depends upon the nature of the work, the capacity of the servant, his situation and all the surrounding circumstances. Whether he was such a boy as could work for a period of 21 consecutive hours at the kind of work assigned to him and under the conditions existing at that place involves inquiry, not only as to his age, but also as to his strength, physical condition and other pecularities within the knowledge of the employer or his agent, or so obvious that a reasonably cautious man would have discovered them. Being broad enough to let in these additional facts and to permit full and complete inquiry as to the existence of the fact of injury by the means alleged, the declaration is sufficient, and the demurrer thereto was properly overruled.

But the proof does not come up to the declaration in point of strength. The deceased servant was only 17 years old and undersize, weighing about 130 pounds. On the morning of February 28th, he arose at four or five o'clock and went to work at seven. The section gang to which he belonged consisted of eight men, but only three or four of them worked with him that day. Between three and five o'clock, they quit for the day on account of rain. At that time, the foreman of the gang announced his intention to keep two men in the cut during the night and the plaintiff's decedent was selected as one of them, whether at his own instance and request or by order of the foreman is a question as to which the evidence conflicts. He went out at about seven or eight o'clock in the evening in company with Morris Chapman and remained in and about the cut from that time until his death, working part of the time and spending the balance of it by a fire near their place of work. At about four o'clock in the morning, he was sitting by the fire asleep, and Chapman, hearing the approach of the east bound train, shook him to arouse him. In response to this effort, he uttered an inquiry "umph", and then Chapman left him and went down the track ahead of the train to see if it was clear of obstruction. When he returned, the deceased was not found by the fire

and a search revealed his remains along the track, showing he had been killed by a train.

The decedent had worked with the section crew for about a month and with experienced men along the double track of the defendant's railroad. He had worked only about seven or eight hours on the last day of February, and made no complaint of fatigue to the foreman, though some of the witnesses say he looked tired and worn out that evening. After he went back to the cut at night, he did very little work. He and Chapman who was with him made about two trips along the slide before midnight and one after midnight. The balance of the time they sat by a fire about 16 or 20 feet from the west bound track. When aroused by Chapman, Adams was not sleeping soundly, but only lightly or dozing. After Chapman left him and started along the track, he looked back and saw Adams standing up by the fire. He must necessarily have arisen and left the fire, else he would not have been harmed. At this time, two trains were approaching, a freight train from the west and a passenger train from the east, and both passed before Chapman returned. The body of Adams had been cut in two or nearly so on the east rail of the west bound track, a fact showing he was killed by the passenger train going west. No negligence or lack of duty is shown on the part of the engine men on either train, and the headlights on both the trains could have been seen for some distance.

If there was any failure of duty on the part of the defendant, it was the omission of warning and notice of danger from working at night, after a full day of wakefulness in which seven or eight hours work had been done. In the case of an adult this danger would be regarded as an ordinary one necessarily, for it would have been as well known to the servant as the master. It is a danger within the common knowledge of ordinary men, and there is no ground upon which it can be said an adult servant does not know and appreciate it as fully as the master. But, in the case of an infant servant, ordinary risks are conditional. In other words, they are not ordinary risks, but extraordinary ones, unless it appears that, in some way, the servant had knowledge of them and appreciated them. It does not appear that the deecased had ever before worked at night on a railroad track

or elsewhere, so as to make it apparent from his experience or observation that the numbing effect of fatigue and loss of sleep would increase the danger of injury. If such experience had been shown, the court could say as matter of law he assumed the risk. *Williams* v. *Coal & Coke Co.*, 55 W. Va. 84. In the absence of such proof or something else showing knowledge and appreciation of the particular danger, the law imposes upon the master duty to warn and instruct a minor servant as to it. In the discussion of this question, in view of the many cases in which it has arisen, Labatt on Master & Servant, sec. 1154, p. 3067, says: "The essential basis of the rule is that the master is not justified in exposing a servant to any extraordinary risks, and that a servant who cannot, by the exercise of his own unaided intelligence, comprehend the dangers incident to his environment, must necessarily be exposed to such risks, relatively to servants who are capable of comprehending the same dangers. That the duty of instructing minors is really referable to this consideration is strongly indicated by the language used in the earliest cases in which the liability of a master to servants of tender years was discussed."

In the various jurisdictions, the extent of the master's duty to instruct and the considerations upon which it rests, as well as the presumptions of law involved, are not uniformly stated or recognized by the courts. But, in this state, the general principles have been dealt with and to some extent settled upon reasons and considerations that are fairly satisfactory. An infant, after reaching the age of 14 years, is presumed to have sufficient discretion and understanding to be responsible for his wrong, to be sensible of danger and to know how to avoid it; and, after a boy has reached that age, courts do not permit juries to presume him incompetent for the duties of his particular employment, because of minority alone. *Wilginson* v. *Coal & Coke*, 64 W. Va. 93. In that case, an effort was made to impose liability upon a master for injury to one servant by reason of an act of an incompetent fellow servant, a minor, and the only fact shown as ground of negligence was his minority. The legal proposition asserted by it is that a minor over 14 years of age is presumed to have capacity to recognize, appreciate and avoid obvious dangers

and to understand and obey instructions. In *Ewing* v. *Fuel Co.*, 65 W. Va. 726, the injury was sustained by the minor servant himself and the Court stated the rule as follows: "An infant 14 years of age or over, is presumed to possess sufficient mental capacity to comprehend and avoid danger, and if he relies on his want of such capacity the burden of proving it is on him; but if under the age of 14, he is presumed not to possess such capacity, and in an action by him for negligence causing his injury the burden of proving his capacity is on the defendant." In *Bare* v. *Coal Co.*, 61 W. Va. 28, there was no effort to determine or fix arbitrarily an age with reference to presumption, but the Court declared the following rule: "It is actionable negligence for an employer to engage and place at a dangerous employment a minor who, although instructed, lacks sufficient age and capacity to comprehend and avoid the dangers of the employment, if the employer has or should have notice of the minor's age and lack of capacity." Following these decisions, the Court held in *Ewing* v. *Fuel* Co., cited, as follows: "Whether, or not, an infant possessed sufficient mental capacity to comprehend and avoid the dangers incidental to his employment, and whether or not he was aware of his danger and could have avoided it by use of such care as might reasonably be excepted in one of his age, are questions of fact for the jury." The general rule given by Labatt, at sec. 1155, p. 3069, is in complete accord with this holding. He states it as follows: "Ordinarily it is within the function of the jury to say whether a minor servant comprehended a work in such a sense as to absolve the employer from the obligation to instruct him. It is only when the proper inference from the testimony is so clear as to be free from doubt that it becomes a matter of law for the court."

From the authorities cited and the observations previously made herein, the existence of a peculiar and unusual danger, incident to a service for an unreasonably long time and without sleep, is obvious, and it is not pretended or claimed that any instruction as to such danger was given the minor servant for whose wrongful death this action was brought. After having been required to work seven or eight hours, he was stationed with another employee at a dangerous cut for the purpose of keeping the track free from obstruction during the

night. The duty assigned excluded the privilege of sleep. It was to watch rather than to work and therefore necessitated his remaining awake. In the absence of proof of instruction as to this peculiar danger and of experience on the part of the servant, from which knowledge thereof can be inferred, the rules of law to which reference has been made, impose liability.

While the danger here noted and to which the deceased was exposed would naturally suggest itself to an adult, knowledge of it comes not by mere visual observation, as in the case of most perils, but by a mental operation, requiring the process of reasoning from cause to effect and the exercise of prescience and wariness which presumptively immature minds do not possess without stimulation or direction. This presumption rests upon common knowledge of the lack of prudence and caution characteristic of children and youths.

In view of this conclusion, the court below rightfully refused to instruct the jury to find for the defendant. That Chapman awakened Adams and told him train No. 15 was approaching was not a fact precluding right of recovery. Hence the court properly refused instruction No. 6, intended to make it conclusive. The court properly refused to give instruction No. 8, because it was substantially the same as No. 7 which had been given. Instruction No. 10 was substantially the same as No. 6 and was properly refused, for the reason given as justifying refusal of the latter. Defendant's instruction No. 15, which the court refused, is substantially covered by its instruction No. 3, which the court gave, wherefore there was no error in refusing it. The plaintiff's instruction No. 1, to the giving of which the defendant objected, states the law as it is here expressed, except that it leaves out the omission to give the servant notice or warning of the danger, but lack of such notice or warning is an admitted fact in the case, which obviously may be assumed or ignored by the instructions. At least, it devolved upon the defendant to prove it and it adduced no evidence tending to do so.

Exception was taken to the action of the court in overruling objections to a number of questions and answers of witnesses, relating to the size and physical and mental condition of the servant, in general, and as to his weariness and fatigue on the evening before he was killed. Though not highly import-

ant, these matters were relevant and material and no reason for their exclusion is assigned in the brief and we perceive none. Testimony to a conversation between the deceased and the foreman under whom he worked, the evening before he was injured, pertaining to his work that night, was objected to, but no ground of exclusion or reason for it is stated in the brief and we see none.

Finding no error in the judgment, we affirm it.

*Affirmed.*

ROBINSON, JUDGE, does not concur.