# CHARLESTON

MARTIN, ADM'R. v. CARTER COAL CO.

Submitted February 4, 1915.    Decided February 16, 1915.

1. MASTER AND SERVANT—*Injury to Servant—Defective Appliances.*
    Though generally, as a means of protection to his servants, a

master must exercise reasonable care and diligence to keep in repair and good order the machines and appliances used by them and keep himself informed as to their condition by inspection, he is not liable for an injury occasioned by a defect arising out of the use of an appliance and susceptible of simple, easy, adequate and timely remedy by the servants themselves, in the absence of proof of his assumption of duty to inspect for such defects and correct them. (p. 656).

2. EVIDENCE—*Judicial Notice—Defective Appliances—Susceptibility of Remedy—Matter of Common Knowledge.*

Though susceptibility of such remedy is not shown by the testimony of witnesses, the court will take judicial notice thereof, if it is matter of common knowledge. (p. 656).

3. MASTER AND SERVANT—*Injury to Servant—Negligence of Fellow Servant.*

If injury to one servant results from the use of an appliance having such a defect, by another, the legal cause of the injury is the act of the latter, a fellow servant, in making use of the implement without having corrected the defect. (p. 656).

4. SAME—*Injury to Servant—Negligence—Burden of Proof.*

In an action by the personal representative of a deceased minor servant for recovery of damages for wrongful death, on the ground of failure to instruct the servant as to his duties and warn him of the danger incident to his employment, it is incumbent upon the plaintiff to prove lack of such instruction and warning. (p. 656).

5. SAME—*Injury to Servant—Liability of Master—Knowledge.*

Having employed, as a servant, a minor over the age of fourteen years, the master cannot be held liable for injury to him, on the ground of mental inferiority reducing his capacity to that of a person under such age, in the absence of proof of knowledge of such fact or of circumstances sufficient to put him upon inquiry as to it. (p. 658).

Error to Circuit Court, McDowell County.

Action by W. M. Martin, administrator, etc., against the Carter Coal Company. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*W. B. Kegley* and *Anderson, Strother & Hughes,* for plaintiff in error.

*Ross & Kahle* and *Sanders & Crockett,* for defendant in error.

POFFENBARGER, JUDGE:

On this writ of error to a judgment for $4,000.00 for the death of a servant, alleged to have been caused by the negligence of the master, there are six assignments of error, but the argument is practically limited to the question of the sufficiency of the evidence and the rulings on instructions.

The declaration no doubt contains some unnecessary averments of immaterial matters, as is often the case, but all the counts contain sufficient allegations. The immaterial matter is mere harmless surplusage.

Plaintiff's decedent, a boy fifteen years old and a brakeman in a coal mine, fell between the cars, by reason of a parting of the train, while going down a slight grade, and was run over by the rear cars, or pushed ahead of them, and so injured to such an extent that he died. The declaration contains three counts based, respectively, upon defectiveness of the car coupling, lack of instructions and warning of danger, the servant being a minor, and unsafety of the place of work.

The couplings were effected by means of what are called bumpers, draw-heads, links and pins. Protruding ends of a piece of timber running through the car constitute the bumpers. An iron bar three-quarters of an inch or an inch thick and four inches wide, lying on top of the timber and attached to it, is called the draw-head or draw-bar. Extending out on the bumpers nearly to the ends thereof, this bar is raised by a compound bend so as to allow space between it and the timber for an iron coupling link, more than a foot long. An iron pin, an inch in diameter and approximately seven inches long, goes through a hole in the draw-head, the link and the bumper. Defectiveness of a draw-head and a coupling pin is the alleged cause of the parting of the train and proximate cause of the injury. In accordance with his usual method, the boy, after coupling the motor to the train, got on the car next to the motor on which he rode to the drift mouth, where he alighted and then got on the last car, as it passed, and began setting the brakes on the separate cars, passing from one to another as the brakes were set. While he was in the act of stepping from the third to the fourth car, they separated and he fell between them. An

immediate examination of the coupling disclosed the bent pin hanging on the third car by a chain, the coupling link attached to the fourth and a defect in the draw-head. The latter was bent upward so that the end of it was about an inch higher than it should have been. Whether the bend was gradual or sharp is not clearly indicated by the evidence. No disturbance of the rust on it, by cracking or scaling, indicating coincidence of injury to the draw-bar with the parting of the train, or nearness of the two facts in point of time, was observed by any of the witnesses. In connection with the inquiry as to the rust and its appearance, one of the witnesses was asked more than once if he had examined the defective attachment and replied that he had. In aid of this evidence, it was shown that couplings made with draw-bars in the condition of the one in question often parted.

The general rule requiring the master to keep machines and appliances in order and to inspect them for information as to their condition, as a means of safety to the servant, like all others, has its well recognized exceptions. He is not required to repair defects arising in the daily use of an appliance, for remedy of which proper and suitable materials are supplied, and which may easily be remedied by the workmen themselves, without the assistance of skilled mechanics. *Cregan* v. *Marston,* 126 N. Y. 568; *Maynihan* v. *Hills Co.,* 146 Mass. 586; *Rice* v. *King Philip Mills,* 144 Mass. 229; *McGee* v. *Boston Storage Co.,* 139 Mass. 445; *Johnson* v. *Tow-Boat Co.,* 135 Mass. 209; *Daley* v. *Boston etc. R. Co.,* 147 Mass. 101; *Mining & Mfg. Co.* v. *Erling,* 148 Ill. 521. Though not applied, because the evidence did not warrant application thereof, in the case, the principle was well and concisely stated in *Nord Deutscher etc. Co.* v. *Ingerbregsten,* 51 N. J. L. 400, 51 Am. State Rep., 604, as follows: ''Discrepancies, however, have arisen in the application of the latter rule, because of another rule firmly established, that the master is not responsible to his servant for the negligence of a fellow-servant engaged in a common employment. In determining whether an employee, through whose negligence defects in the machinery have failed of discovery or repair, is a representative of the master in the discharge of the master's duty to the servant, or is a fellow-servant of the latter en-

gaged in a common employment, many incongruous decisions have been rendered. On this topic a rational distinction would seem to be, that when the employee's duty to inspect or repair the apparatus is incidental to his duty to use the apparatus in the common employment, then he is not intrusted with the master's duty to his fellow-servant, and the master is not responsible to his fellow-servant for his fault, but that if the master has cast a duty of inspection or repair upon an employee who is not engaged in using the apparatus in a common employment with his fellow-servant, then that employee in that duty represents the master, and the master is chargeable with his default.'' See also Labatt, Master & Serv. sec. 1550 et seq. citing numerous authorities, illustrating the rule, and Sherman & Red. Neg. sec 195, p. 489.

That a servant charged with the duty of coupling or loading coal cars and seeing an iron bar of the dimensions given in the evidence, bent slightly out of position can bend it back to its place by a blow or two from a hammer, pick or other ordinary implement used about his place of work, is matter of common knowledge of which courts may take judicial notice. The iron was flexible, else it would have broken instead of bending, and a displacement of an inch at the end of a bar, in a distance or length of seven or eight inches, by a bend, would not be likely to crack or weaken it so as to render in incapable of bearing the strain. Moreover, the defect was one of minor and ordinarily harmless character, such as we may well suppose is often corrected in the manner suggested. Of course there was a fault, a wrong, negligence in the use of the draw-bar in its defective condition, but the defect grew out of its use and was such as would be corrected ordinarily by servants themselves in making the coupling. In other words, the remedy was so simple and easy that presumptively and naturally it would fall within the province and duty of the car coupler. Provision of a system of inspection for discovery of such defects would be practically useless, wherefore the law does not impose it, in the absence of assumption of duty in that respect by the master, and none has been shown.

No instructions were given for the plaintiff. Those given for the defendant assumed the existence of evidence tending

to prove the plaintiff's case, but they were taken under compulsion; for the defendant moved to exclude the plaintiff's evidence on the ground of insufficiency and did not waive the benefit of the motion. It introduced no evidence. That motion was improperly overruled, in so far as it pertains to the evidence relied upon as proving an actionable defect, for reasons stated. The second and third counts, charging failure to warn against danger and to provide a safe place for work are unsustained by any evidence at all. There was no effort to prove lack of instruction and warning. In the absence of proof to the contrary, the law presumes the master has performed every duty imposed upon him by the law. Labatt, Mas. & Serv. 1599. An exception to this rules is found in the application of the maxim, *res ipsa loquitur,* but it seems to be the only one in the law of negligence and is more apparent than real. For its inconsistency with this conclusion as to the burden of proof, an unnecessary observation in the opinion in *Adams* v. *C. & O. Railway Co.,* 73 W. Va. 698, 80 S. E. 1115, is hereby disapproved.

Though the boy was over fourteen years old, there was some evidence tending to prove immaturity and mental inferiority, such as to limit his capacity to that of a boy under fourteen, and right to go to the jury upon the question of negligence in his employment, under principles declared in *Bare* v. *Coal Co.,* 61 W. Va. 28. But, as he was, in fact, over fourteen, no legal duty was violated by giving him employment. Nor does it appear from the evidence that the superintendent or other managing agent of the company had any knowledge of his alleged lethargy and lack of the capacity usually found in boys of his age. We are not aware of any rule or principle imposing duty upon the master to make inquiry as to whether a servant has some extraordinary or unusual characteristics. Agreeably to general principles, he may assume the existence of normal conditions, until he is, in some way, advised of the contrary, or at least, until something sufficient to put him upon inquiry as to them is brought to his attention. The mine foreman employed and discharged the men at the mine at which the boy was hurt, but there is no evidence that he had observed the abnormal characteristics

relied upon. Nor are they shown to have been, in any sense, notorious.

The verdict being unsustained by evidence the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed, and new trial awarded.*