Statement.

## Richmond.

### Bristol Telephone Co. v. Stockton's Administrator.

#### November 16, 1916.

1. MASTER AND SERVANT—*Warning Inexperienced Servant.*—It is the duty of the master to adequately warn an inexperienced servant of unknown dangers attendant upon the place and work to which he is assigned; but the master is not an insurer of the servant's safety, and is liable for the consequences, not of danger, but of negligence.

2. MASTER AND SERVANT—*Injury to Servant—Allegation of Negligence—Lack of Instruction—Burden of Proof—Presumption.* —In an action to recover for a negligent injury, the burden is on the plaintiff to prove the negligence alleged. In the absence of evidence to the contrary, the master is presumed to have discharged his affirmative duties to his servant in furnishing him a reasonably safe place and appliances in and with which to work, and also in giving him necessary warning and instruction. Where the negligence alleged is the failure of the master to instruct the servant how to adjust his belt, or how to sit or work in the belt so as to "balance" or "control himself" while swinging there, and there is no evidence on the subject, but the servant was fully warned of the dangers of the employment, judgment should be given for the master. He can safely rely upon the presumption in his favor, and leave the burden upon the servant to overcome that presumption. Negligence of the master cannot be inferred from the mere occurrence of the acident by which his servant is injured.

Error to a judgment of the Circuit Court of Washington county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Powell, Price & Simmonds,* for the plaintiff in error.

*Hutton & Hutton, White, Penn & Penn* and *J. B. Cox,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

While plaintiff's intestate was at work in the employment of the telephone company, stringing telephone wires and attaching them by means of clips to a cable fastened to a line of poles along Boone street in Johnson City, Tennessee, his foot came in contact with a heavily charged electric wire strung on a cross-arm beneath the cable, attached to the pole near which Stockton was working, and he was killed. The administrator brought this action to recover damages for the death of his intestate, which he ascribes to the negligence of the company.

At the close of plaintiff's evidence the defendant demurred thereto, which demurrer was overruled and judgment rendered on the conditional verdict for $8,000, the damages assessed by the jury.

The case involves no new principle of law, and the facts are undisputed. The grounds of negligence alleged are, (1) the conduct of the defendant in directing plaintiff's intestate, an inexperienced man, to ascend the pole to clip cable in proximity to high power wires; and (2) that the instruction and warning given to plaintiff's intestate by the defendant of the dangers of the employment were not as full, timely and complete as ordinary care demanded.

The material facts are these: Stockton was twenty-two years of age, of good intelligence and physique. He was doing farm work at his home with his father, in Washington county, Virginia, at the time of his employment; three years before the accident he had worked for the defendant for about five weeks in putting up telephone lines, and before that time had done some work on a country line for a long distance telephone, and had learned to string telephone wire and to climb poles, "and handled himself all right like a man who knew what he was doing." He had worked for

a year or two as a section hand on a railroad, and in 1911 procured for Gwaltney (the line foreman in charge when the accident happened) a job with the defendant, and Gwaltney in turn employed him for the defendant. Until the time of the accident Stockton had had no experience in working in proximity to heavily charged wires or in clipping cable. He commenced work on the afternoon of May 11, 1914, stretching a messenger wire that the cable is hung to. This work was on Boone street where he was killed the next morning. At that point the messenger wire and cable of the defendant were strung on two poles belonging to the Tennessee Eastern Electric Company, and below these wires cross-arms were attached to the poles upon which the high power wires of the latter company were stretched. Before climbing the pole the first time Stockton was warned by a fellow workman, Rumley, that the wires on the cross-arms were hot wires and if he touched any one of them it would kill him, and he was told not to touch them. After being thus warned and instructed, plaintiff's intestate climbed up the pole through these charged wires to the messenger wire, where he worked that afternoon, and came down the same pole in safety at the close of the day.

On the following morning about six o'clock, Stockton again went to work at the same place and continued work until the time of the accident, about ten o'clock. Before he and his fellow workman, Rumley, climbed the pole, the latter again told him not to touch any of the high power wires. Gwaltney, the foreman, who was standing on the ground, also, before he went up, told him to be careful when he got among them, that the wires were hot and if he touched them they would kill him; and he again cautioned him after he had ascended the pole to be careful—"He told him they would kill him before he climbed the pole, and after he climbed the pole he told him to be careful."

On that morning Stockton went up the pole, passing through the high power wires, and later came down and ascended the pole again before the accident occurred, each time passing through the high power wires in safety. After climbing the pole the last time, he fixed his seat on the messenger wire running from the pole he had climbed to a pole on the opposite side of Boone street, at an angle of 45 degrees from the messenger wire, which passed to other poles in the opposite direction on the same side of Boone street; the line of the messenger wire as it crossed the street carried it further and further away from the high power wires. The seats used by Stockton and Rumley were those commonly employed in that sort of work, the ends of the safety belt being fastened by snaps to the messenger wire slipped along as the work progressed. A board seat with notched ends was placed in the swing made by the belt, upon which the occupant sat. Stockton got in the safety and started out on the messenger wire in the direction across Boone street, and Rumley, after showing him how to make the first clip, set to work clipping cable on the other side of the pole in the opposite direction. Stockton had only made the one clip and was about three feet from the pole when the accident happened. He was sitting facing the high power wires, which even at that distance from the pole were not directly beneath him but to one side. Rumley, on the other-side of the pole, was working immediately over hot wires, and says there was plenty of space between the messenger wire and the high power wires for him to sit up in the belt and not touch them. Stockton was given the safer place where, the wires being to one side, there was greater space between them and the messenger wire. While in that position the end of his foot came in contact with a live wire and he was instantly killed.

From this summary of undisputed facts it is plain that the defendant was not guilty of actionable negligence upon either of the grounds alleged in the declaration. The two propositions are so concatenated that they cannot intelligently be considered separately.

There is no warrant in the evidence for the premise that plaintiff's intestate was an "inexperienced boy." He was a well developed man physically and mentally, and though he had never clipped cable in proximity to high power wires, he was not without experience as a lineman in the construction of telephone lines, and was "a very good pole climber, and handled himself all right, like a man who knew what he was doing." To hold that a master could not assign such a servant to the duty of clipping cable, after having given him full instruction and warning of the danger from contact with highly charged wires occupying a lower zone on the same pole, without incurring unconditional liability in case accident should befall him, would be to raise the standard of duty of the master to the servant from that of ordinary care to insurer of his safety. The establishment of such doctrine would lay an embargo on the employment of servants in all inherently dangerous vocations, and outlaw many businesses which are essential to the needs and comfort of mankind. It is unquestionably the duty of the master adequately to warn an inexperienced servant of unknown dangers attendant upon the place and work to which he is assigned; but the master is not an insurer of the servant's safety, and is liable for the consequences, not of danger, but of negligence. *Riverside Cotton Mills* v. *Green,* 98 Va. 58, 34 S. E. 963; *Southern Ry. Co.* v. *Moore,* 108 Va. 388, 61 S. E. 747.

Complaint is made that plaintiff's intestate was not sufficiently instructed as to the danger of the place in which he was to work; yet the dangerous character of the wires was fully explained to him, and he was repeatedly warned

that contact with them would kill him.  For all practical purposes a polytechnic course in electricity could not have done more.  The measure of information needful to be imparted by the master to the servant for his safety largely depends upon the subject.  To instruct a servant how to operate complex machinery may call for long continued training under an experienced teacher, while a word of warning may be quite sufficient to guard an intelligent adult against danger from contact with a heavily charged wire.  The one demands· skilful performance, the other merely avoidance.  It is but juggling with words to say that if the foreman had said to plaintiff's intestate, "Keep your feet up," it would have been sufficient warning (as is conceded by counsel), and yet, in the same brief, to argue that repeated warnings from the foreman and a fellow · workman that "these are hot wires and if you touch any of them they will kill you," was insufficient.  The evidence shows that Stockton had conscious knowledge of the dangers of the place and work, and that the accident resulted from his momentary inadvertance or thoughtlessness in suffering his foot to come in contact with a charged wire.

The point was also stressed that Stockton was not sufficiently instructed as to the use of the belt.  This contention is founded upon a misconception of the application of the rule with respect to the burden of proof.  The doctrine is elementary that the burden is on the plaintiff to prove negligence; and, moreover, that the master, in the absence of proof to the contrary, is presumed to have discharged his affirmative duties to his servant in furnishing him a safe place and safe appliances in and with which to work, and, also, in giving him necessary warning and instruction.

It was developed by the plaintiff in his evidence in chief and emphasized by the defendant on cross-examination that Stockton was fully warned of the dangers of the employment.  And there is no evidence in the record that he was

not likewise instructed in the use of the belt and balancing himself on the wire. It merely appears that having been fully warned of the danger, he climbed the pole, adjusted the belt and seemingly handled himself with more than ordinary skill. In these circumstances, in the absence of all proof on the subject, no obligation rested on the master to introduce evidence; he could safely rely on the legal presumption that he had discharged his duty in that regard to his servant, and leave the burden, where the law placed it, upon the plaintiff to overcome that presumption.

That ground of negligence was charged in the declaration and constituted an essential part of plaintiff's case, and the consequence of his failure to prove it must be visited upon him and not upon the defendant. These propositions are too elementary and well settled to require elaboration.

In *Jacoby Co.* v. *Williams*, 110 Va. 55, 65 S. E. 491, 494, Cardwell, J., in delivering the opinion of the court, at page 64, said: "In all cases of the class to which this belongs it is held that negligence on the part of the employer cannot be inferred from the mere occurrence of the accident by which his servant is injured; the presumption being that the master has discharged all of his legal duties to his servant, and this presumption can only be overcome by affirmative proof." Citing *Moore L. Co.* v. *Johnson*, 103 Va. 88, 44 S. E. 557, and *Va. I. C. & C. Co.* v. *Kiser*, 105 Va. 705, 54 S. E. 889.

In *Martin* v. *Carter Coal Co.*, 75 W. Va. 653, 84 S. E. 574, one count in the declaration charged a failure to warn and instruct plaintiff's decedent, a boy about fifteen years old, who was employed by the defendant as a brakeman in its coal mine and was killed by the parting of a train of coal cars. The court, reversing the judgment against the defendant, through Poffenbarger, J., said: "There was no effort to prove lack of instruction and warning. In the absence of proof to the contrary, the law presumes the mas-

ter has performed every duty imposed upon him by the law. Labatt Master & Servant, sec. 1599."

So far as we are advised the authorities are practically one way on the general proposition. As in the West Virginia case, so in this case, "there was no effort to prove lack of instruction and warning." It is true an opinion witness (not, however, defendant's foreman, as is inaccurately stated) did say that it would require skill for a man to sit in a belt and balance himself; yet this self-evident observation is wholly beside the mark upon the question of failure to instruct.

It is plain that without fault on the part of the master, so far as the record discloses, the servant's death was proximately due to his own negligent disregard of repeated warnings, and for such self-imposed injury the law affords no redress.

The principles controlling this case are too familiar and well settled by the uniform course of decision in this court to render further citation of authority necessary. We will, however, call attention to the case of *Templeton's Admr. v. Lynchburg Trac. Co.,* 110 Va. 853, 67 S. E. 351, which is undistinguishable from and conclusive of the present case.

The judgment must be reversed, the demurrer to the evidence sustained, and judgment rendered for the Bristol Telephone Company.

SIMS, J., dissenting:

I cannot concur in the above opinion that the action of the court below in overruling the demurrer to evidence and entering judgment for the plaintiff in accordance with the verdict of the jury should be reversed.

I think the opinion right in so far as it holds that the defendant in the court below gave sufficient *warning* to the plaintiff's intestate; but it owed an equal duty to such intestate, either not to have exposed him to the risk of performing the duty in the performance of which he came to his death, knowing, as it did, that he had absolutely no experience therein, or to have used ordinary care to have *instructed* him in the proper manner of the performance of such work before exposing him to such risk.

In 1 Shearman & Redfield on Negligence (6th ed.), sec. 219-a, the learned authors say: "The principles governing the employment of minors are, to a large degree, also applicable to the employment of inexperienced, ignorant, feeble or incompetent servants. A master having notice of any such defect in a servant, no matter what his age may be, is bound to use ordinary care to instruct the inexperienced or ignorant, to avoid putting the feeble to work too heavy for their strength, and generally to refrain from exposing them to risks which they are not fit to encounter."

In the case of *Reynolds* v. *Railroad Co.,* 64 Vt. 66, 24 Atl. 134, 33 Am. St. Rep. at pp. 910-11, it is held: "When an employer engages one to perform a dangerous service, which requires caution and the exercise of peculiar skill, knowing that he is without experience and ignorant of its dangers, it is the duty of the employer to give the employee *suitable instructions* and warnings as to the dangers he is likely to meet in the performance of the services he is engaged in, and is required by the employer to perform. The defendant does not seriously contend against this rule, but insists that at the time of the accident it was using all reasonable means to instruct the plaintiff as to the duties of his position, the dangers of the work, and how to avoid them. But this very fact was one that the plaintiff had the right to have the jury pass upon, for the court cannot say, as matter of law,

that the defendant was fulfilling its duty in respect of instructions."

In the case of *Am. S. Co.* v. *Fost*, 12 Ind. App. 421, 39 N. E. 891, as taken from a note in 44 L. R. A. at p. 83, it was held: "Granting that the findings show that the appellee had been sufficiently warned of the perils and dangers attending the performance of his duties, it still remains true, as found by the general verdict, that he was ignorant of the nature of his work, and of the manner of the proper performance of the same. There is nothing in the answers returned by the jury to indicate that appellee had received *such instructions* as he should have been given, in order to understand fully the character of the work he was to perform, and the proper manner of performing the same. It may have been true, therefore, that just prior to the injury the appellee was warned 'to be careful,' and 'look out for his hand;' and yet with the reasonable exercise of his faculties, he might still have been unable to so perform his duties as to avoid the danger. Simply warning the appellee of danger generally by the appellant did not excuse the latter from pointing out the particular danger of this employment, and *to so instruct* the appellee as to enable him to avoid such danger. Nor is the finding that the appellee was so warned in conflict with the implied finding in the general verdict that the appellee did not receive any instructions from the appellant or its servants concerning the duties he had to perform, and the dangers and hazards attending his employment, at the time of the injury. A warning to an ignorant and inexperienced man, under such circumstances, would be of little avail."

In *Giebell* v. *Collins Co.*, 54 W. Va. 518, 466 S. E. 569, it is held: "It is the duty of the master who sets a servant to work in a place of danger to give him such notice and instruction as is reasonably required by the youth, inexperience, or

want of capacity of the servant, and, failing to do so, he is liable for the damage suffered through such neglect."

That skill acquired by experience was necessary to fit the plaintiff's intestate to perform the duty in question without being exposed to unreasonable danger to himself, is affirmatively shown by the testimony of several witnesses for plaintiff.

The evidence in this case shows that defendant knew that the plaintiff's intestate had never before sat in a belt or clipped a cable, even where not exposed to the danger of coming in contact with a live wire. Yet it gave him absolutely no instruction as to how to adjust his belt or how to sit or work in the belt so as to "balance" or "control himself" while swinging therein (as the testimony in the case shows affirmatively, as I view it, or certainly as the jury were warranted in inferring from the evidence, and hence upon demurrer to evidence must be regarded by the court as the fact in this case). Never having had any experience whatever in working swinging in a belt, or in adjusting the strap which lifted or lowered him, he was ignorant of the extent of the danger to which he was exposed. No amount of warning as to the existence of the danger, if he came in contact with the live wire, could inform one without some such experience of the difficulty of avoiding coming into such contact. This the testimony for plaintiff shows the defendant must have known. This the plaintiff's intestate did not know. With this knowledge on the defendant's part, and with its further knowledge of the absence of such knowledge on the part of the plaintiff's intestate, the defendant exposed the plaintiff's intestate to the risk it did, without, as above stated, giving him any instructions whatever.

Whether the defendant in such conduct was guilty of failure to exercise reasonable care for the safety of its said employee was a question of fact for the jury.

This court, in the case of *Mason* v. *Post,* 105 Va. 494, 54 S. E. 311, 11 L. R. A. (N. S.) 1038, said: "Negligence is the failure to do what a reasonable and prudent person would ordinarily have done, under the circumstances of the situation; or doing what such a person, under existing circumstances, would not have done. The duty is dictated and measured by the exigencies of the occasion."

As was said in *Fisher* v. *C. & O. Ry. Co.,* 104 Va. at p. 639, 52 S. E. 374, 2 L. R. A. (N. S.) 954: "The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in the case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of affairs is such that reasonable men may differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury."

Or, as stated in the case of *Milton* v. *N. & W. Ry. Co.,* 108 Va. 763, 62 S. E. 961: "In brief, it may be said that, if upon a demurrer to the evidence, the evidence is such that a jury might have found a verdict for the demurree, the court must so find, and grant judgment in his favor, * * * (cases cited). And, further, where reasonably fair-minded men might differ about a question, such question must be decided against the demurrant on a demurrer to the evidence."

As was said by this court in the late case of *Norfolk* v. *Anthony,* 117 Va. at p. 777, 86 S. E. 68: "It is furthermore well settled by the Supreme Court of the United States and this court by practically an unbroken line of decisions, that negligence only becomes a question of law, to be taken from the jury, when the facts are such that fair-minded men can only draw one inference therefrom. If fair-minded men,

from the proof submitted, may honestly differ, as to the negligence charged, the question is not one of law, but one of fact, to be determined by the jury under proper instructions from the court."

I am of opinion that there was ample evidence in this case to warrant the jury in finding that in the aforesaid conduct of the defendant it was guilty of a failure to exercise reasonable care for the safety of its said employee. The court below was of this opinion and overruled the demurrer to evidence by the defendant and entered judgment for the plaintiff. I think the lower court was right, and that the case should be affirmed on this point.

In the case of *Templeton's Admr.* v. *Lynchburg Traction Co.,* referred to in the majority opinion of the court, there was no question of inexperience or of duty to instruct.

*Reversed.*